[Oral Argument Not Yet Scheduled]

_____

**No. 25-3248**

**UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

Joaquin HERRERA AVILA,

*Petitioner–Appellee,*

v.

Pamela BONDI, Attorney General; *et al.,*

*Respondents–Appellants.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
No. 0:25-cv-03741-JRT-SGE
Hon. John R. Tunheim

**PETITIONER – APPELLEE'S PRINCIPAL BRIEF**

Michael K.T. Tan
My Khanh Ngo
Oscar Sarabia Roman
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
m.tan@aclu.org
mngo@aclu.org
osarabia@aclu.org

Judy Rabinovitz
Natalie Behr
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
jrabinovitz@aclu.org
IRP_Nbehr@aclu.org

*Counsel for Petitioner-Appellee*

*(Additional Counsel listed on inside
cover)*

Benjamin Casper
Teresa Nelson
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
MINNESOTA
P.O. Box 14720
Minneapolis, MN 55414
bcasper@aclu.org
tnelson@aclu.org

David L. Wilson
Cameron Lane Youngs Giebink
Katherine Lourdes Santamaria El
Bayoumi
WILSON LAW GROUP
3019 Minnehaha Avenue
Minneapolis, MN 55406
dwilson@wilsonlg.com
cgiebink@wilsonlg.com
ksantamaria@wilsonlg.com

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This case concerns the Executive Branch's new interpretation of the immigration statutes to mandate detention without bond for noncitizens who entered the United States without inspection. This policy contradicts the plain language and context of the statutes, congressional understanding of the statutes at the time of enactment, and decades of agency understanding and practice, and has led to the unlawful detention of thousands of noncitizens nationwide. Hundreds of federal district courts throughout the country, including within this Circuit, have rejected the government's detention policy and granted writs of habeas corpus. The district court below is among this judicial consensus and held that Petitioner-Appellee ("Petitioner") Joaquin Herrera Avila is properly subject to detention under 8 U.S.C. § 1226(a) and is eligible for consideration for release on bond.

This Court should affirm. The Immigration and Nationality Act's text, structure, and history confirm that § 1226(a) applies and makes bond available to noncitizens like Petitioner who are apprehended in the United States and placed into removal proceedings, while the statute the government's asserts here, 8 U.S.C. § 1225(b)(2), applies only to other noncitizens "seeking admission" at the border and ports of entry. Petitioner agrees that oral argument may assist the Court in resolving the important statutory question presented and requests 20 minutes of oral argument.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iv

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUE ........................................................................1

INTRODUCTION ............................................................................................2

STATEMENT OF THE CASE..........................................................................4

    I. The History of Detention During Removal Proceedings and the Current
    Statutory Framework.................................................................................4

        A. Pre-1996. ..........................................................................................4

        B. IIRIRA (1996).....................................................................................5

        C. Laken Riley Act (2025). ...................................................................10

    II. Judicial and Executive Branch Interpretation and Government's New
    Mandatory Detention Policy ....................................................................10

    III. Factual and Procedural Background ..................................................14

SUMMARY OF THE ARGUMENT .................................................................16

ARGUMENT ....................................................................................................19

    I. Standard of Review..................................................................................19

    II. Section 1226 Governs Petitioner's Detention and Affords Him Bond. .......20

        A. Section 1226 provides the default detention authority for individuals
        arrested in the United States for a removal proceeding. ............................20

        B. Section 1226(c) reinforces that § 1226 provides people like Petitioner
        with access to bond. ..................................................................................22

C. Executive Branch interpretation and practice confirm that § 1226 applies to Petitioner. ...................................................................27

III. Section 1225(b)(2) Applies to Noncitizens, Unlike Petitioner, Who Are "Seeking Admission" at the Border. ..............................................29

A. The plain language of § 1225(b)(2) applies only to individuals "seeking admission" to the United States. ..............................................30

B. The government's interpretation ignores the plain language and context of § 1225(b)(2). ...........................................................32

C. IIRIRA confirms that § 1225(b)(2) does not apply to millions of noncitizens living in the United States.......................................37

D. Pursuing immigration relief is not "seeking admission." ....................40

CONCLUSION .................................................................................42

CERTIFICATE OF COMPLIANCE.......................................................44

CERTIFICATE OF SERVICE ..............................................................45

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.M.L. by & through Losie v. United States*,
61 F.4th 561 (8th Cir. 2023) ................................................................20

*Abramski v. United States*,
573 U.S. 169 (2014)..................................................................20, 27

*Bankamerica Corp. v. United States*,
462 U.S. 122 (1983)........................................................................28

*Barco Mercado v. Francis*,
No. 25-cv-6582, --- F. Supp. 3d ----, 2025 WL 3295903 (S.D.N.Y.
Nov. 26, 2025) ..............................................................................4

*Biden v. Texas*,
597 U.S. 785 (2022)..................................................................21, 33

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*,
161 F.4th 1048 (7th Cir. 2025) ..............................................*passim*

*Chisom v. Roemer*,
501 U.S. 380 (1991)........................................................................38

*Cruz Bautisa v. Bondi*,
No. 1:25-cv-280-DLH-CRH (D.N.D. Jan. 7, 2026), Dkt. No. 15 ......................4

*Cruz-Miguel v. Holder*,
650 F.3d 189 (2d Cir. 2011) ................................................................29

*Doe v. Moniz*,
800 F. Supp. 3d 203 (D. Mass. 2025)........................................................24

*E.C. v. Noem*,
No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct.
14, 2025) ....................................................................................24

*Finch v. Payne*,
983 F.3d 973 (8th Cir. 2020) ................................................................20

*Helbrum v. Williams Olson*,
No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273 (S.D. Iowa
Sept. 30, 2025) ...................................................................................24

*Henley v. Brown*,
686 F.3d 634 (8th Cir. 2012) ............................................................16

*Janis v. United States*,
73 F.4th 628 (8th Cir. 2023) .............................................................20

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)....................................................................*passim*

*Jose J.O.E. v. Bondi*,
797 F. Supp. 3d 957 (D. Minn. 2025)...............................................13

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988)...........................................................................29

*King v. Burwell*,
576 U.S. 473 (2015)...........................................................................26

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...........................................................................27

*Luna Perez v. Sturgis Public Schls.*,
598 U.S. 142 (2023)...........................................................................39

*Marx v. Gen. Rev. Corp.*,
568 U.S. 371 (2013)...........................................................................33

*Mejia Arias v. Moniz*,
No. 1:25-CV-13019-IT, 2025 WL 3197613 (D. Mass. Oct. 27,
2025) ..................................................................................................24

*Nielsen v. Preap*,
586 U.S. 392 (2018)..............................................................8, 23, 26

*Nixon v. Missouri Mun. League*,
541 U.S. 125 (2004)...........................................................................42

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021)...........................................................................21

*Ojeda Montoya v. Joyce*,
  No. 2:25-CV-00558-SDN, 2025 WL 3557777 (D. Me. Nov. 17,
  2025) ................................................................................................24

*Pereira v. Sessions*,
  585 U.S. 198 (2018).........................................................................24

*Sanchez v. Mayorkas*,
  593 U.S. 409 (2021).........................................................................40

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010).........................................................................23

*United States v. Bryan*,
  339 U.S. 323 (1950).........................................................................24

*United States v. Eagleboy*,
  200 F.3d 1137 (8th Cir. 1999) .........................................................13

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014)...........................................................................3

*Whitman v. Trucking Ass'ns*,
  531 U.S. 457 (2001).........................................................................38

*Zemel v. Rusk*,
  381 U.S. 1 (1965).............................................................................28

**Statutes**

8 U.S.C. § 1101(a)(13)................................................................1, 18

8 U.S.C. § 1101(a)(13)(A)..........................................................6, 30

8 U.S.C. § 1101(a)(18).....................................................................41

8 U.S.C. § 1101(b)(4).......................................................................41

8 U.S.C. § 1182................................................................................25

8 U.S.C. § 1182(a) .............................................................................7

8 U.S.C. § 1182(a)(3)(A) .................................................................32

8 U.S.C. § 1182(a)(6)(A)(i) ...................................................14, 21

8 U.S.C. § 1182(a)(6)(C) ............................................................9

8 U.S.C. § 1182(a)(6)(C)(ii) ......................................................32

8 U.S.C. § 1182(a)(6)(E)(i) ........................................................32

8 U.S.C. § 1182(a)(7) .................................................................9

8 U.S.C. § 1182(a)(7)(A)(i) ........................................................14

8 U.S.C. § 1182(a)(7)(B)(i)(I) ....................................................32

8 U.S.C. § 1182(a)(9)(A) ............................................................37

8 U.S.C. § 1182(a)(9)(A)(i) .........................................................32

8 U.S.C. § 1182(a)(9)(B) .............................................................37

8 U.S.C. § 1182(a)(9)(C) .............................................................37

8 U.S.C. § 1182(d)(5)...............................................10, 24, 25, 29

8 U.S.C. § 1182(d)(5)(B) .............................................................25

8 U.S.C. § 1184(f) .......................................................................25

8 U.S.C. § 1187 ..........................................................................31

8 U.S.C. § 1225 ........................................................1, 6, 10, 25

8 U.S.C. § 1225(a)(1) .....................................................7, 18, 32, 34

8 U.S.C. § 1225(a)(2) ..................................................................25

8 U.S.C. § 1225(a)(3) ..........................................................*passim*

8 U.S.C. § 1225(a) (1995) ............................................................5

8 U.S.C. § 1225(b) (1995) ............................................................5

8 U.S.C. § 1225(b) ...............................................................*passim*

8 U.S.C. § 1225(b)(1)...........................................................9, 10, 32

8 U.S.C. § 1225(b)(1)(A)(i) ............................................................9

8 U.S.C. § 1225(b)(1)(A)(iii) .........................................................9

8 U.S.C. § 1225(b)(2) ............................................................*passim*

8 U.S.C. § 1225(b)(2)(A) ......................................................*passim*

8 U.S.C. § 1225(b)(2)(B)(ii) .........................................................9

8 U.S.C. § 1226 .....................................................................*passim*

8 U.S.C. § 1226(a) ...............................................................*passim*

8 U.S.C. § 1226(c) ...............................................................*passim*

8 U.S.C. § 1226(c)(1) ..................................................................12

8 U.S.C. § 1226(c)(1)(A) .......................................................8, 23

8 U.S.C. § 1226(c)(1)(B) .............................................................8

8 U.S.C. § 1226(c)(1)(C) .............................................................8

8 U.S.C. § 1226(c)(1)(D) .......................................................8, 23

8 U.S.C. § 1226(c)(1)(E) ...................................................8, 10, 23

8 U.S.C. § 1226(c)(1)(E)(i) .........................................................25

8 U.S.C. § 1226(c)(4) .............................................................8, 23

8 U.S.C. § 1227 ..........................................................................25

8 U.S.C. § 1227(a) .......................................................................6

8 U.S.C. § 1227(a)(1) .................................................................25

8 U.S.C. § 1229a ..................................................................6, 9, 16

8 U.S.C. § 1229a(a)(1) ...............................................................21

8 U.S.C. § 1229a(a)(2) ...............................................................21

8 U.S.C. § 1229a(c)(2) .................................................................7

8 U.S.C. § 1229a(c)(2)(A) ...................................................21

8 U.S.C. § 1229a(c)(3)(A) .....................................................7

8 U.S.C. § 1229a(e)(2)(A) ...................................................21

8 U.S.C. § 1229c(a)(1) .........................................................22

8 U.S.C. § 1231(b)(3)(A) .....................................................40

8 U.S.C. § 1252(a) (1995) ...............................................5, 22

8 U.S.C. § 1252(a)(1) (1995) ..........................................5, 22

8 U.S.C. § 1252(b)(2)(A) .....................................................36

8 U.S.C. § 1255(a) ...............................................................29

8 U.S.C. § 1736 ...................................................................31

28 U.S.C. § 1291 ...................................................................1

28 U.S.C. § 1331 ...................................................................1

28 U.S.C. § 2241 ..............................................................1, 15

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 .........................28

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104–208, 110 Stat. 3009 (1996) ...............................................*passim*

Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) .........................................10

REAL ID Act of 2005, Pub. L. 109.13, 119 Stat. 231 ...........................................28

USA PATRIOT Act of 2001, Pub. L. 107-56, 115 Stat. 272 ...................................28

**Rules and Regulations**

8 C.F.R. § 208.16(c)(4) .......................................................40

8 C.F.R. § 208.17(a) ............................................................40

8 C.F.R. § 235.3(c)(1) .........................................................26

8 C.F.R. § 236.1(c)(5) .................................................................12

8 C.F.R. § 236.21(c)(1) ...............................................................40

8 C.F.R. § 1003.19 ........................................................................8

8 C.F.R. § 1003.19(a) ..................................................................11

8 C.F.R. § 1003.19(h)(2)..........................................................11, 12

8 C.F.R. § 1003.19(h)(2)(i)(B) ....................................................26

8 C.F.R. § 1236.1(d) .................................................................8, 11

62 Fed. Reg. 10,312 (Mar. 6, 1997) ........................................12, 27

## Other Authorities

Doris Meissner, Comm'r, INS to Henry J. Hyde, Chairman, S. Comm.
    on the Judiciary, Letter Invoking IIRIRA Transitional Period
    Custody Rules (Oct. 3, 1997) ................................................38

H.R. Rep. No. 104-469, pt. 1 (1996) ....................................*passim*

H.R. Rep. No. 104-828 (1996).................................................7, 22

Jill Wilson, et al., Cong. Rsch. Serv., R47848, Nonimmigrant
    Overstys: Overview and Policy Issues (2023)........................38

*Matter of Akhmedov,*
    29 I. & N. Dec. 166 (BIA 2025) ..........................................12

*Matter of Castillo-Padilla,*
    25 I. & N. Dec. 257 (BIA 2010) ......................................12, 29

*Matter of D-J-,*
    23 I. & N. Dec. 572 (A.G. 2003) ..........................................12

*Matter of Guerra,*
    24 I. & N. Dec. 37 (BIA 2006) ...............................................8

*Matter of Lemus-Losa,*
    25 I & N. Dec. 734 (BIA 2012) .............................................37

*Matter of Quilantan*,
    25 I. & N. Dec. 285 (BIA 2010) ...........................................................25

*Matter of Yajure Hurtado*,
    29 I. & N. Dec. 216 (BIA 2025) .................................................13, 32

Memorandum from Sirce E. Owens, Acting Dir., Exec. Off. for
    Immigr. Rev., to All of EOIR (Jan. 30, 2025) ....................................26

*Seek*, Oxford Encyclopedic English Dictionary, 3d ed. (1996) ..............30

*Seek*, Webster's Third New International Dictionary (1993) ...................30

Br. for the Pet'rs, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No.
    15-1204), 2016 WL 5404637 ............................................................11

Supp. Br. for the Pet'rs, *Jennings v. Rodriguez*, 583 U.S. 281 (2018)
    (No. 15-1204), 2017 WL 430387 .....................................................20

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2241. The district court granted Petitioner's habeas petition on October 21, 2025, App. 346; R. Doc. 14 at 15, and issued final judgment on October 22, 2025, App. 349–50; R. Doc. 15, at 1–2. The government filed its appeal on November 7, 2025. R. Doc. 18, at 1. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

8 U.S.C. § 1226 is the default detention statute that governs detention during the removal proceedings of noncitizens arrested in the United States. It generally authorizes consideration for release on bond through a bond hearing. In contrast, 8 U.S.C. § 1225(b)(2) imposes mandatory, no-bond detention on noncitizens "seeking admission" to the United States. Is Petitioner—a noncitizen who was arrested and placed into removal proceedings, and charged with entering the country without inspection years ago—subject to detention under § 1226 or § 1225(b)(2)?

Most apposite authorities:

- *Jennings v. Rodriguez*, 583 U.S. 281 (2018)

- *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025)

- 8 U.S.C. § 1226; 8 U.S.C. § 1225; 8 U.S.C. § 1101(a)(13)

1

# **INTRODUCTION**

This case involves this administration's decision to reinterpret the Immigration and Nationality Act ("INA") to require the detention, without possibility of bond, of Petitioner Joaquin Herrera Avila and millions of other noncitizens residing in the country solely because they entered the country without inspection. In 1996, when Congress enacted the current detention statutes, the legislature deliberately chose to maintain the longstanding scheme that provided for release on bond of such noncitizens. The Executive promulgated contemporaneous regulations providing these individuals with bond hearings before an immigration judge to determine if they pose a danger or flight risk. And for the last three decades, *everyone*—Congress, the Executive, and the courts—has understood the detention statutes to work in this way. Indeed, five different presidential administrations, both Democratic and Republican (including the first Trump administration), have faithfully applied the statutes in this manner.

But in mid-2025, the government suddenly decided that noncitizens who entered the country without inspection were instead subject to mandatory, no-bond detention. In justifying this change, the government relied on a statutory provision that by its terms applies only to noncitizens "seeking admission" to the United States. This novel interpretation was not based on any action by Congress; in fact, Congress

had amended the detention statutes earlier that year and reaffirmed that noncitizens who entered without inspection are bond eligible.

Mr. Herrera Avila is one of the many noncitizens the government has imprisoned based on this sudden about-face. He has lived in the United States since 2006, raised three U.S. citizen children with his wife, and built his life here. Prior to the government's adoption of the contested policy in July 2025, he was entitled to a bond hearing under the detention statute, 8 U.S.C. § 1226. But under its reinterpretation of the statute, the government now claims he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which requires the detention without bond of noncitizens "seeking admission" to the United States. The government does not argue that Mr. Herrera Avila is a flight risk or danger to the community. Rather, its sole justification is that its novel reinterpretation of the law categorically requires his detention.

"When an agency claims to discover in a long-extant statute an unheralded power . . . [the courts] typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). This is especially true here, given the breathtaking consequences of the government's position. If accepted, the government's new interpretation would require the detention of *millions* of noncitizens who, like Petitioner, are alleged to have entered the country without inspection—regardless of whether they present a danger or flight

risk. That would be the largest expansion of mandatory detention in U.S. history. Yet, for nearly three decades, this purported statutory command escaped the notice of Congress and five different administrations.

Hundreds of judges in district courts across the country have rejected the new detention policy as irreconcilable with the INA's text, structure, and history.[1] Just last month, the Seventh Circuit preliminarily concluded the same.[2] This Court should reject the government's attempt to rewrite the INA and affirm the district court's judgment.

## STATEMENT OF THE CASE

### I. The History of Detention During Removal Proceedings and the Current Statutory Framework

#### A. Pre-1996.

Before 1996, the INA distinguished between "deportation proceedings" and "exclusion proceedings." Deportation proceedings applied both to noncitizens who

---

[1] *See* Joint Mot. for Judicial Notice, Exh. A (listing 63 decisions from 22 district court judges in this Circuit agreeing that § 1226 applies to petitioners); *Barco Mercado v. Francis*, No. 25-cv-6582, --- F. Supp. 3d ----, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (listing 350 decisions rejecting government's position); *Cruz Bautisa v. Bondi*, No. 1:25-cv-280-DLH-CRH (D.N.D. Jan. 7, 2026), Dkt. No. 15 at 5–6 (noting that "the overwhelming majority" of "more than 1,600 other similar immigration cases" have agreed that § 1226(a) applies) (collecting cases).

[2] *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–63 (7th Cir. 2025) (order granting and denying stay motion in part, and finding that the government was unlikely to establish that noncitizens who entered without inspection are subject to mandatory detention under § 1225(b)(2)).

had entered lawfully but were subject to removal (e.g., as a result of criminal convictions), and to noncitizens who had entered the United States without inspection and were later apprehended in the interior. *See* 8 U.S.C. § 1252(a)(1) (1995). Exclusion proceedings applied to people encountered at the border during the inspection process, but who had not yet "entered" the country. *See id.* §§ 1225(a)-(b) (1995), 1226(a) (1995).

For people in deportation proceedings, the statute authorized arrest and detention "[p]ending a determination of deportability" and permitted release on bond. 8 U.S.C. § 1252(a) (1995). But for noncitizens apprehended at the border and placed in exclusion proceedings, the statute mandated detention without bond. *Id.* § 1225(b) (1995).

### B.    IIRIRA (1996).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104–208, 110 Stat. 3009 (1996). IIRIRA overhauled the immigration statute, including the rules governing the removal of noncitizens. However, amidst all those changes, Congress maintained the basic rules for detention by: (1) preserving the right to bond for most noncitizens apprehended inside the country under a new provision, 8 U.S.C. § 1226(a); (2) enacting an exception to that statute, 8 U.S.C. § 1226(c), which expanded the group of so-called "criminal aliens" whose release on bond was now prohibited; and, (3) continuing to

mandate detention without bond for those apprehended at the border under a new provision, 8 U.S.C. § 1225(b). Section 1225(b) also authorized the mandatory detention of a limited subset of recent entrants who were placed in new expedited removal proceedings.[3]

What Congress did in IIRIRA was the following:

First, it eliminated separate deportation and exclusion proceedings, combining them into a single "removal" proceeding that provided the new vehicle for adjudicating the cases of all individuals charged with removal, regardless of whether they had entered the United States or were stopped at the border. *See* IIRIRA § 304, 110 Stat. 3009-587 to 3009-593; *see also* 8 U.S.C. § 1229a.

Second, it made the applicable grounds of removal (i.e., deportability or admissibility) depend *not* on physical entry into the United States, but instead on the fact of an "admission"—defined as a "lawful entry" after inspection by an immigration officer. 8 U.S.C. § 1101(a)(13)(A). Under the new scheme, a noncitizen who has been "admitted" to the country is subject to grounds of "deportability," *see id*. § 1227(a), whereas someone who entered the country without inspection and has *not* been admitted or paroled is subject to grounds of "inadmissibility," *see id*.

---

[3] The text of § 1226 and § 1225 are reproduced in the Addendum pages 1–10.

§ 1182(a). Thus, noncitizens who enter without inspection and are physically present in the country are no longer "deportable" but instead "inadmissible."[4]

Third, Congress categorized both an individual "who arrives in the United States" as well as an individual "present in the United States who has not been admitted," as an "applicant for admission." 8 U.S.C. § 1225(a)(1). Thus, after IIRIRA, individuals who enter the country without inspection not only are "inadmissible" (rather than "deportable"); Congress also deemed them "applicants for admission." *Id*.

Fourth, despite making these changes, Congress made the new detention statute governing individuals apprehended inside the country, § 1226, apply to noncitizens "pending a decision on whether [they will] be removed"—a term that encompasses individuals charged with either inadmissibility or deportability. *See* 8 U.S.C. § 1226(a). The accompanying House report also stated that the new § 1226 "restates"—or retains—"the current provisions in [former INA] section 242(a)(1)," the provision that authorized "release on bond" for individuals who entered without inspection. H.R. Rep. No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.) (same). Currently, noncitizens detained under

---

[4] By making them "inadmissible," Congress relieved the government of the burden of proving such individuals' deportability in removal proceedings, instead placing the burden on the noncitizens to show by clear and convincing evidence that they are not inadmissible. *Compare* 8 U.S.C. § 1229a(c)(2), *with id*. § 1229a(c)(3)(A).

§ 1226(a) "may seek review of [their] detention by an officer at the Department of Homeland Security ['DHS'] and then by an immigration judge," and may "secure [their] release" on bond upon convincing the officer or immigration judge that they "pose[] no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2018) (citing 8 C.F.R. §§ 1003.19, 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)).

Fifth, Congress enacted a new provision, § 1226(c), which expanded the mandatory detention of individuals it labeled "criminal aliens" by carving them out from bond eligibility under § 1226(a). *Preap*, 586 U.S. at 398; *see also* IIRIRA §§ 303(a), 321, 110 Stat. 3009-585, 3009-627 to 3009-628. This subsection prohibited the release of noncitizens charged with inadmissibility or deportability on certain criminal and national security grounds who would otherwise have been eligible for release on bond under § 1226(a). 8 U.S.C. §§ 1226(c)(1)(A)–(E), (c)(4). Importantly, Congress acknowledged the significant increase in detention that would result from § 1226(c)'s expansion of mandatory detention. Accordingly, IIRIRA included an option to delay the provision's implementation for up to two years to allow the then-Immigration and Naturalization Service ("INS") to increase its detention capacity. *See* H.R. Rep. No. 104-469, pt. 1, at 120, 123, 207; IIRIRA § 386(a), 110 Stat. at 3009-653.

Finally, Congress enacted a new provision, § 1225(b), to govern detention at the border of "arriving aliens" and other "applicants for admission." *Id*. The provision contains two subsections, both of which retain the prior practice of mandatorily detaining, without the possibility of bond, individuals who present themselves at ports of entry and are determined to be inadmissible:

- Section 1225(b)(1) authorizes mandatory detention of individuals placed into new expedited removal proceedings.[5]

- Section 1225(b)(2) applies to "other" applicants for admission who are "seeking admission" to the country, *id*., and are not subject to expedited removal, *see id*. § 1225(b)(2)(B)(ii).

Specifically, § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a of this title." *Id*. Under both provisions of § 1225(b), noncitizens have no access to a bond

---

[5] The new expedited removal procedures applied to a limited subset of noncitizens determined to be inadmissible based on fraud or lack of proper entry documents. *See* 8 U.S.C. § 1225(b)(1)(A)(i); *see also id*. §§ 1182(a)(6)(C), 1182(a)(7). Congress authorized the application of this provision to individuals who arrive at a port of entry. It also gave the Attorney General the option to apply the provision to recent entrants who had been in the country for less than two years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii).

hearing. Instead, the only option for release is through a discretionary grant of parole. *See* 8 U.S.C. § 1182(d)(5) (authorizing DHS, the jailing authority, to parole the noncitizen "for urgent humanitarian reasons or significant public benefit").

In contrast to § 1226(c), Congress expressed no concern in IIRIRA that the detention mandated by either § 1225(b)(1) or § 1225(b)(2) would increase the number of detainees or the need for detention beds.

### C.  Laken Riley Act (2025).

The Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), enacted last year, amended § 1226(c) to add a new ground for mandatory detention applying to individuals who are charged with inadmissibility for having entered the country without inspection and are additionally accused or convicted of specified criminal conduct. *See id*. (codified at 8 U.S.C. § 1226(c)(1)(E)).

## II.  Judicial and Executive Branch Interpretation and Government's New Mandatory Detention Policy

The Supreme Court and other federal courts have long recognized the aforementioned scope of the detention statutes: § 1225 operates "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is inadmissible," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), whereas § 1226 is the default detention authority for noncitizens who are "already in the country." *Id.* at 289; *see also Castañon-Nava*, 161 F.4th at 1061 (observing distinction made in *Jennings* between statutes

10

applicable to noncitizens "seeking admission" versus those "already in the country").[6]

Likewise, since the enactment of IIRIRA in 1996 until mid-2025, the Executive Branch had consistently understood § 1226 to afford a bond hearing to people like Petitioner who are in the interior but allegedly entered the country without inspection. Contemporaneously with IIRIRA's enactment, the Executive Branch issued regulations confirming that noncitizens arrested in the interior and placed into removal proceedings are eligible for release on bond under § 1226(a) (unless § 1226(c) applies). *See* 8 C.F.R. §§ 1003.19(a) & (h)(2), 1236.1(d). A March 1997 interim rule, still in place today, explains that, "[d]espite being applicants for admission," noncitizens "who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection)" are eligible for bond, and that "inadmissible aliens, except for arriving aliens," can seek bond hearings before an immigration judge. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum

---

[6] The government in *Jennings* itself described the statute in that way. *See* Br. for the Pet'rs at 2, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204), 2016 WL 5404637, at *4 (describing § 1226(a) as governing "[noncitizens] who are already inside the United States"); *id*. at *2 (describing § 1225(b)(2)(A) as applying to those "who arrive at our Nation's doorstep seeking admission"); *id.* at *18–19 ("Section 1225(b) is the most recent iteration of a statutory framework that, for a century, has provided for the exclusion of inadmissible aliens arriving at the Nation's borders.").

Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). At the same time, the rule specified who was *not* eligible for bond hearings—primarily "arriving aliens" and noncitizens subject to § 1226(c)(1). *Id.* at 10,323, 10,361; *see also* 8 C.F.R. §§ 236.1(c)(5), 1003.19(h)(2).

These regulations have remained essentially unchanged for three decades. And consistent with the regulations, the Executive Branch—including the first Trump administration—has, until now, consistently interpreted § 1226 to apply to those who entered without inspection. *See* Resp. Br. 28; *see also*, *e.g.*, *Matter of D-J-*, 23 I. & N. Dec. 572, 262 (A.G. 2003) (Attorney General "exercising [his] authority under section [1226]" to deny release on bond to Haitian noncitizen who had evaded inspection); *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 262 (BIA 2010) (observing that noncitizen who was present without admission or parole was released under § 1226); *Matter of Akhmedov*, 29 I. & N. Dec. 166, 166 (BIA 2025) (stating that, as recently as June 30, 2025, in the case of noncitizen who entered unlawfully, "[t]he respondent's custody determination is governed by the provisions of section [1226]").

On July 8, 2025, however, DHS, in coordination with the Department of Justice ("DOJ"), peremptorily adopted a novel interpretation of the detention statutes. Inconsistent with decades of prior understanding, DHS "determined," with little explanation and in a new and unpublished guidance, "that section [1225] of the

[INA], rather than section [1226], is the applicable immigration detention authority for all applicants for admission," including anyone who entered without inspection. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 963 (D. Minn. 2025) (quoting guidance).[7] DHS instructed Immigration and Customs Enforcement ("ICE") to subject any noncitizen present in the United States without being admitted or paroled to mandatory detention under § 1225(b)(2), explaining that these "applicants for admission" would now to be "treated in the same manner that 'arriving aliens' have historically been treated." *Id.*

Months later, the Board of Immigration Appeals ("BIA" or "Board") adopted that interpretation in a published decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The BIA concluded that noncitizens arrested in the interior and charged with inadmissibility are now subject to mandatory detention under § 1225(b)(2) and not bond-eligible under § 1226. *Id*. at 228; *see also id*. at 219 (stating that § 1226 "does not purport to overrule the mandatory detention requirements" of § 1225(b)(2)). The result is that the government is applying

---

[7] A copy of that unpublished DHS interim guidance is available at https://perma.cc/SNA2-XNSZ. The Court may take judicial notice of the agency's guidance because "they do not present new evidence on a disputed question of fact" and relate directly to the matters at issue. *See United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999). The government's brief also cites related guidance from U.S. Customs and Border Protection, which refers to DHS's change in its interpretation of the detention statutes. *See* Resp. Br. 28 n.4.

§ 1225(b)(2) not only at the border, but also to noncitizens apprehended anywhere within the United States who are charged as inadmissible, and is refusing to afford such noncitizens bond hearings under § 1226.

## III.   Factual and Procedural Background

Petitioner Joaquin Herrera Avila came to the United States from Mexico in 2006. App. 10; R. Doc. 1, at 10.[8] He has worked in irrigation and, along with his wife, has raised three children, ages 15, 11, and 4, all of whom are U.S. citizens. App. 80, 82; R. Doc. 7-2, at 1, 3.

On August 29, 2025, immigration authorities arrested Mr. Herrera Avila during a routine traffic stop and issued a Notice to Appear, which initiated removal proceedings against him. App. 75; R. Doc. 7-1, at 1; App. 81; R. Doc. 7-2, at 2. The government charged him with being a noncitizen "present in the United States without being admitted or paroled," under 8 U.S.C. § 1182(a)(6)(A)(i), and for not "possess[ing] . . . a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document," under § 1182(a)(7)(A)(i). App. 75, 79; R. Doc. 7-1, at 1, 5. DHS determined that Mr. Herrera Avila would be "held in ICE custody without bond." App. 82; R. Doc. 7-2 at 3. An immigration judge then denied his

---

[8] In the district court, the government alleged that Petitioner crossed into the United States again in 2016, App. 286; R. Doc. 11, at 2, but later conceded this was an error during Petitioner's immigration court proceedings.

request for bond, finding that he was not eligible for a bond hearing under § 1225(b)(2). App. 8; R. Doc. 1, at 8.

Mr. Herrera Avila filed a habeas petition under 28 U.S.C. § 2241 on September 23, 2025, App. 1–32; R. Doc. 1, at 1–32, which the district court granted on October 21, 2025. App. 332–48; R. Doc. 14, at 1–17. The court held that Mr. Herrera Avila's detention was governed by § 1226(a) and that he was entitled to a bond hearing. App. 333; R. Doc. 14, at 2. The court reasoned that § 1225(b)(2) did not apply to him, relying on the text of the detention statutes, the Supreme Court's decision in *Jennings*, Congress's recent enactment of the Laken Riley Act, and evidence in the record of the government classifying Petitioner under § 1226. App. 342–45; R. Doc. 14, at 11–14.

The district court ordered the government to provide Mr. Herrera Avila a bond hearing under § 1226(a) within seven days or release him. App. 346–47; R. Doc. 14, at 15–16. He was granted release on bond on October 24, 2025. App. 351; R. Doc. 16, at 1.

The government filed its notice of appeal on November 7, 2025. R. Doc. 18, at 1.[9]

---

[9] The district court did not reach the merits of Petitioner's other claims under the Due Process Clause and Administrative Procedure Act. *See* App. 25–29; R. Doc. 1, at 25–29. Should the Court reverse the decision below on the statutory grounds, the

Section 1226 is the INA's default detention rule for noncitizens living in the United States. It applies broadly to noncitizens placed into § 1229a removal proceedings after apprehension in the interior, including those who entered without inspection and are therefore charged as inadmissible. Congress made this clear by drafting § 1226 as a general authorization to detain a noncitizen "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a)—as the term "removed" encompasses individuals who are inadmissible. In contrast, the pre-IIRIRA statute providing for bond-eligible detention of those apprehended inside the United States was limited to noncitizens "pending a determination of deportability." The government's position that § 1226 only applies to those who have been previously admitted ignores this change. *See infra* Section II.A.

Section 1226(c) reinforces that Congress intended § 1226 to govern the detention of inadmissible noncitizens like Petitioner through its structure. That subsection expressly carves out an exception to § 1226(a)—which provides for release on bond—for noncitizens charged with inadmissibility (or deportability) on certain criminal or terrorism-related grounds, for whom detention is mandatory. By doing so, Congress clearly understood and intended that allegedly inadmissible

---

Court should remand for the district court to address the habeas petition's remaining claims in the first instance. *See Henley v. Brown*, 686 F.3d 634, 644 (8th Cir. 2012).

noncitizens who are *not* charged on criminal or terrorism-related grounds are eligible for release on bond under § 1226(a). Otherwise, there would have been no need to carve them out from that subsection. *See infra* Section II.B.

Congress's recent enactment of the Laken Riley Act demonstrates even more clearly that § 1226 applies to Petitioner. By specifically expanding the scope of § 1226(c) mandatory detention to include a new category of noncitizens who are inadmissible because they entered without inspection and who committed (or are accused of) certain criminal offenses, the legislation was intentionally taking that subset of inadmissible noncitizens out of § 1226(a) and thereby necessarily recognizing that such inadmissible noncitizens are covered by § 1226(a). That understanding refutes the government's belated effort to reinterpret § 1226 to the contrary. Indeed, accepting the government's position would *undermine* the Laken Riley Act by permitting the release of such noncitizens on discretionary parole. *See infra* Section II.B.

The Executive Branch's own contemporaneously-adopted regulations and three decades of unbroken practice underscore that the INA affords noncitizens who are present in the United States access to bond, even if they entered the country without inspection. *See infra* Section II.C.

By contrast, § 1225(b)(2) does *not* apply to people like the Petitioner. Section 1225(b)(2)'s detention mandate applies only to an "applicant for admission" who is

"*seeking admission.*" *See id*. The INA deems noncitizens who enter the country without inspection "applicants for admission" based on their being "present in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1). But even if Petitioner is considered an "applicant for admission" under the statute, that does not mean that he is "seeking admission." That language—specifically chosen by Congress—reflects an activity, not a status. Consistent with the INA's definition of "admission," the term "seeking admission" means a present tense effort to obtain the "lawful entry into the United States after inspection and authorization." *Id*. § 1101(a)(13). A noncitizen who entered without inspection and has been living in the United States is clearly not engaging in such an effort. Moreover, the government's argument that all "applicants for admission" are necessarily "seeking admission" to the United States effectively writes "seeking admission" out of the statute, rendering it superfluous. *See infra* Sections III.A–B.

The government argues that Petitioner's pursuit of relief from removal constitutes "seeking admission." But that position is foreclosed by Supreme Court precedent, which has recognized that such relief affords "lawful status" and not an "admission." Nor can it be squared with the fact that § 1225(b)(2) does not encompass seeking relief before an immigration judge, as Petitioner and many noncitizens are doing. And the government's position would have the absurd result of rendering noncitizens ineligible for bond when they seek relief from removal, but

eligible for bond if they choose to voluntarily depart the United States. *See infra* Section III.D.

The text of IIRIRA and the staggering ramifications of the government's position further demonstrate that Congress could not have intended to mandate the government's detention policy. When Congress expanded mandatory detention through § 1226(c) for noncitizens charged with removal based on criminal conduct in IIRIRA, it was acutely sensitive to resource constraints and permitted the agency to delay implementation and increase its detention capacity to hold the estimated 45,000 noncitizens that § 1226(c) would cover each year. But if the government were correct about the scope of § 1225(b)(2), that would mean the same Congress enacted the provision to silently require the mandatory detention of an estimated two million people at that time—and closer to six million today—without providing the adequate resources or bedspace. *See infra* Section III.C.

In sum, the district court correctly held that Petitioner's detention is governed by § 1226, not § 1225(b)(2), and that he is entitled to a bond hearing under the statute. This Court should affirm the grant of habeas relief.

## ARGUMENT

### I.     Standard of Review

When reviewing a district court's habeas decision, this Court "review[s] the district court's findings of fact for clear error, and its conclusions of law de novo."

*Finch v. Payne*, 983 F.3d 973, 978 (8th Cir. 2020) (citations omitted). Statutory interpretation is a question of law that this Court reviews *de novo*. *A.M.L. by & through Losie v. United States*, 61 F.4th 561, 563 (8th Cir. 2023).

## II. Section 1226 Governs Petitioner's Detention and Affords Him Bond.

### A. Section 1226 provides the default detention authority for individuals arrested in the United States for a removal proceeding.

The text, structure, and history of § 1226 make clear that it is the detention authority for Petitioner. *See Janis v. United States*, 73 F.4th 628, 636 (8th Cir. 2023) (courts must "interpret statutes using not only the statutory context, structure, history, and purpose, but also common sense.") (quoting *Abramski v. United States*, 573 U.S. 169, 179 (2014)) (internal quotation marks omitted), *cert. denied*, 144 S. Ct. 1019 (2024).

Section 1226 provides the "default rule" for noncitizens who are apprehended "inside the United States" and are detained for removal proceedings. *Jennings*, 583 U.S. at 288.[10] The plain language of § 1226(a) provides that DHS "may" arrest and

---

[10] The government attempts to minimize *Jennings* by asserting it did not rule directly on whether inadmissible noncitizens such as Petitioner fall within § 1226. Resp. Br. 57–58. But the Solicitor General expressly agreed that inadmissible individuals arrested inside the country, including those who entered without inspection, were covered under § 1226, and the Court analyzed the statute with this understanding in mind. *See, e.g.*, Supp. Br. for the Pet'rs at 12, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204), 2017 WL 430387, at *12 ("Section 1226(a) governs the detention and release of other aliens arrested inside the United States. This

detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" while also permitting the noncitizen's release "on bond" or other conditions. 8 U.S.C. § 1226(a). By statute, removal proceedings cover noncitizens, like Petitioner, who are charged with being inadmissible after entering the country without inspection. *See* 8 U.S.C. § 1229a(a)(1) (directing the immigration judge to "conduct proceedings for deciding the inadmissibility . . . of [a noncitizen]"); *see also id*. § 1229a(a)(2), (c)(2)(A), & (e)(2)(A) (referring to charges and determinations of inadmissibility). Given that Congress wrote § 1226 to cover inadmissible noncitizens, it necessarily applies to individuals, like Petitioner, who are charged as inadmissible for being "present in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i), and are detained "pending a decision on whether [they will] be removed," *id*. at § 1226(a). The government is simply wrong when it claims that § 1226 applies only to people who were admitted to the country. *See* Resp. Br. 50, 58.

"The historical context in which [§ 1226] was adopted confirms the plain import of its text." *Biden v. Texas*, 597 U.S. 785, 804 (2022) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 165 (2021)). When it enacted IIRIRA in 1996, Congress maintained the basic detention framework that had long provided bond to people

encompasses aliens in a wide variety of circumstances, including those who are present after entering illegally . . . ." (internal citation omitted)).

who had entered without inspection and were arrested for a deportation proceeding. Congress did so by replacing the language providing for detention and bond "[p]ending a determination of deportability" in the predecessor statute, 8 U.S.C. § 1252(a) (1995), with "pending a decision on whether the alien is to be removed" in § 1226. Through this change, Congress thus made clear that the noncitizens who entered without inspection and whom IIRIRA reclassified as inadmissible rather than deportable would remain eligible for bond during removal proceedings. *See* H.R. Rep. No. 104-469, pt. 1, at 229 (explaining that § 1226(a) "restates" the provisions in former § 1252(a)(1) (1995) providing for "release on bond" to noncitizens in the country, including those who entered without inspection); *accord* H.R. Rep. No. 104-828, at 210. Had Congress intended for § 1226 to apply only to deportable noncitizens, it could have simply retained the prior language referring to "deportability" or "deportable" as it did in other sections of the statute. *See, e.g.*, 8 U.S.C. § 1229c(a)(1).

### B. Section 1226(c) reinforces that § 1226 provides people like Petitioner with access to bond.

Section 1226(c) confirms the applicability of § 1226 to inadmissible noncitizens like Petitioner through the statute's structure. Section 1226(c) is an exception to § 1226's general release authority. Section 1226(c) carves out a subset of inadmissible noncitizens from bond eligibility under § 1226(a) where they are charged with removal on certain criminal or terrorism-based grounds, instead

subjecting them to mandatory, no-bond detention. *See* 8 U.S.C. §§ 1226(c)(1)(A) & (D), 1226(c)(4); *see also* 8 U.S.C. § 1226(a) (permitting release on bond "[e]xcept as provided in subsection (c)"); *Preap*, 586 U.S. at 397, 409.

Section 1226(c) is thus the exception that proves the rule: Section 1226(a) generally affords bond to inadmissible noncitizens—including those, like Petitioner, who entered the country without inspection—*unless* the exception in § 1226(c) applies. Indeed, if § 1226(a) did not generally provide bond to inadmissible noncitizens, Congress would have had no need to exclude a subset of them from bond-eligibility under § 1226(a) in the first place. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (the fact that Congress has created specific exceptions "proves" that the statute applies in general).

Congress confirmed this point just last year when it enacted the Laken Riley Act ("LRA"). Indeed, that Act demonstrates even more clearly that Congress understands § 1226 to apply to Petitioner. The LRA added a new ground of mandatory detention to § 1226(c) that specifically targets people, like Petitioner, who entered the country without inspection if they, unlike Petitioner, are also charged with, arrested for, convicted of, or admit to committing certain newly-added crimes. *See* 8 U.S.C. § 1226(c)(1)(E). The LRA thus makes it clear that § 1226(c) is the exception to the general rule that noncitizens, like Petitioner, charged as inadmissible for entering the country without inspection are eligible for bond under

§ 1226(a). Otherwise, there would have been no need for Congress to exclude a subset of those entrants from § 1226(a) bond eligibility.

Indeed, accepting the government's position would *undermine* the LRA. Were the government correct that § 1225(b)(2), and not § 1226, governs the detention of noncitizens who entered without inspection, those noncitizens would become eligible for release on parole under § 1182(d)(5) at the agency's discretion—*even if* they are accused of or committed the Act's predicate crimes. But Congress enacted the LRA precisely to avoid that result and require such noncitizens' detention. *See Pereira v. Sessions*, 585 U.S. 198, 212 (2018) ("'We are not willing to impute to Congress . . . such [a] contradictory and absurd purpose,' particularly where doing so has no basis in the statutory text." (quoting *United States v. Bryan,* 339 U.S. 323, 342 (1950))).[11]

The government has no persuasive response to these arguments. It argues that the LRA does other work besides targeting noncitizens inadmissible for entering

---

[11] Indeed, where petitioners have challenged their detention pursuant to the LRA, courts agree as a threshold matter that the petitioner was *not* subject to § 1225(b)(2) but rather § 1226. *See, e.g.*, *Doe v. Moniz*, 800 F. Supp. 3d 203, 210 (D. Mass. 2025); *Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264, at *8 (D. Nev. Oct. 14, 2025); *Mejia Arias v. Moniz*, No. 1:25-CV-13019-IT, 2025 WL 3197613, at *2 (D. Mass. Oct. 27, 2025); *Ojeda Montoya v. Joyce*, No. 2:25-CV-00558-SDN, 2025 WL 3557777, at *1 n.1 (D. Me. Nov. 17, 2025).

without inspection, because it also applies to inadmissible noncitizens who were admitted in error, crewmen, and stowaways. Resp. Br. 51, 52. But even if that were the case, the government cannot account for why Congress would specifically carve out any inadmissible noncitizens if they were not covered by § 1226(a) in the first place.[12] Nor does the government ever explain why Congress in the LRA specifically focused on noncitizens who are inadmissible based on entering without inspection. *See* 8 U.S.C. § 1226(c)(1)(E)(i) (referring specifically to § 1182(a)(6)(A), under which Petitioner was charged with being "present in the United States without being admitted or paroled").

The government also claims the LRA removes the option of parole for these individuals by now including them under § 1226(c). Resp. Br. 52, 54. But if this had been Congress's intent, it would have either amended § 1225 itself or enacted exceptions to the parole statute, § 1182(d)(5)[13]—not amended § 1226(c), which only applies as "an exception" to people who are otherwise eligible for bond under

---

[12] Moreover, the government is wrong in describing noncitizens who were erroneously admitted as "inadmissible." Resp. Br. 51, 52. Those noncitizens are subject to the grounds of *deportability* at 8 U.S.C. § 1227, not inadmissibility at § 1182, and therefore are not subject to the LRA. *See Matter of Quilantan*, 25 I. & N. Dec. 285, 293 (BIA 2010); 8 U.S.C. § 1227(a)(1). Stowaways also have their own statute providing for their swift removal. 8 U.S.C. § 1225(a)(2).

[13] Instead, the parole statute includes just two exemptions from the Executive's general parole authority: refugees under 8 U.S.C. § 1182(d)(5)(B) and crewmen under 8 U.S.C. § 1184(f).

§ 1226(a). *See Preap*, 586 U.S. at 397, 410; *see also King v. Burwell*, 576 U.S. 473, 497 (2015) (explaining that Congress does not change fundamental aspects of a regulatory scheme through "a winding path of connect-the-dots provisions").[14]

The government lastly argues that there is "overlap under *any* possible reading of the statute," because the LRA imposes no-bond detention on "arriving" noncitizens as well—that is, noncitizens who arrive in the country at a port of entry. Resp. Br. 53–54. But this is simply wrong. "Arriving" noncitizens are *not* detained under § 1226; they are subject to mandatory detention under § 1225(b)(2). *See* 8 C.F.R. § 235.3(c)(1) (requiring the detention of "arriving" noncitizens under § 1225(b)(2)); *id*. § 1003.19(h)(2)(i)(B) (excluding "arriving" noncitizens from bond hearings under § 1226). There was thus no need for Congress to exclude them from bond hearings when it enacted the LRA, as they were already ineligible for them. The government's claimed "overlap" is thus nonexistent.

---

[14] The government's own agency guidance contradicts its theory: the day after the LRA was signed into law, the Executive Office for Immigration Review ("EOIR"), which houses the immigration courts, issued guidance explaining that the Act creates "an additional category of aliens who are subject to mandatory detention" under § 1226(c) and thus ineligible for a bond hearing under § 1226(a). Memorandum from Sirce E. Owens, Acting Dir., EOIR, to All of EOIR, at 1 (Jan. 30, 2025), https://perma.cc/Y37M-CK8H.

### C. Executive Branch interpretation and practice confirm that § 1226 applies to Petitioner.

Contemporaneous Executive Branch interpretation and longstanding practice also support reading § 1226 to govern Petitioner's detention. In March 1997, just months after IIRIRA's enactment, DOJ promulgated regulations reaffirming that noncitizens "who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond." 62 Fed. Reg. at 10,323. And for three decades across five administrations, the government interpreted § 1226 to provide bond hearings to those placed into removal proceedings who entered without inspection. *See supra* Statement of the Case Section II.[15]

Here, "the longstanding practice of the government can"—and should— "inform [the Court's] determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (citation omitted) (cleaned up). The government's contemporaneous interpretation of the statute and adherence to it for decades both provides "powerful evidence that interpreting the Act in [this] way is natural and reasonable," *Abramski v. United States*, 573 U.S. 169, 203 (2014)

---

[15] The government claims that "[u]ntil [2025] . . . the [BIA] had not issued any precedential opinion on the appropriate detention authority" for noncitizens who entered without inspection. Resp. Br. 28. Yet in multiple precedential decisions, including one published in 2025, the Board and the Attorney General said or assumed that § 1226 governed the custody of such noncitizens. *See supra* Statement of the Case Section II.

(Scalia, J., dissenting), and casts serious doubt on the government's departure from the universally-held understanding. *See, e.g.*, *Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of the government's interpretation and practice to reject its new interpretation of the law).

Furthermore, "Congress' failure to repeal or revise in the face of such administrative interpretation . . . constitute[s] persuasive evidence that that interpretation is the one [Congress] intended." *Zemel v. Rusk*, 381 U.S. 1, 11 (1965). Congress had multiple opportunities over three decades to correct the Executive's supposed misunderstanding of the scope of § 1226, including in post-IIRIRA legislation addressing immigration benefits and procedures, the restructuring of the immigration agencies, and judicial review of immigration matters.[16] But it never questioned the government's application of § 1226 to noncitizens like Petitioner. Indeed, through the LRA, it enacted legislation just last year *confirming* that application. *See supra* Section II.B.

Moreover, in addition to rewriting the scope of the detention statutes, the government's new interpretation up-ends other aspects of the immigration system. For example, one consequence of the government's new position is that noncitizens

---

[16] *See, e.g.*, USA PATRIOT Act of 2001, Pub. L. 107-56, 115 Stat. 272; Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135; REAL ID Act of 2005, Pub. L. 109.13, 119 Stat. 231.

who entered without inspection, are detained under § 1225(b)(2), and subsequently released on a grant of § 1182(d)(5) parole may become eligible for green cards. Previously, the Board had held that a noncitizen released from detention under § 1226(a) has not been "parole[d] into the United States" under § 1182(d)(5), which is one of the ways to become eligible for adjustment of status (i.e., a green card). *See* 8 U.S.C. § 1255(a); *see also Matter of Castillo-Padilla*, 25 I. & N. Dec. at 259–60; *Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) (collecting cases). But under the government's new rule, a noncitizen who entered without inspection and is released on a grant of parole—including by future administrations—would suddenly be able to access this immigration benefit. Such unforeseen consequences counsel against sanctioning the government's abrupt departure from past practice.

## III. Section 1225(b)(2) Applies to Noncitizens, Unlike Petitioner, Who Are "Seeking Admission" at the Border.

By contrast, nothing in § 1225(b)(2)—not its text, context, purpose, or history—gives the government the detention mandate it now claims in the interior of the country. Instead, § 1225(b)(2) is confined to individuals apprehended upon inspection at the border. This is consistent with both the meaning of the words that Congress chose—"seeking admission"—the statutory context, and the text and history of IIRIRA. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular

statutory language at issue, as well as the language and design of the statute as a whole." (internal citations omitted)).

**A.    The plain language of § 1225(b)(2) applies only to individuals "seeking admission" to the United States.**

By its plain language, § 1225(b)(2) applies only to those applicants for admission who are "seeking admission." Individuals who are present in the United States after having entered without inspection, like Petitioner who entered years ago, are not "seeking admission."

Start with the operative terms. A straightforward reading makes clear that § 1225(b)(2) does not apply to Petitioner and people like him. Section 1225(b)(2)(A) provides that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a.

*Id*. (emphasis added). "[A]dmission" and "admitted" are defined in the INA to mean "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Dictionaries define "seek" as, *inter alia*, "to go in search of; look for;" "to ask for" or "request;" "to try to acquire or gain; aim at," all of which carry a sense of affirmative, voluntary action. *See* Oxford Encyclopedic English Dictionary, 3d ed. at 729 (1996) (to "try or want to find" or "ask for; request"); Webster's Third New International Dictionary

at 2055 (1993) (defining "seek" as, *inter alia*, "to go in search of;" or "to try to acquire or gain;" or "to make an attempt").

Putting these definitions together, the term "seeking admission" means "to go in search of, or to try to acquire or gain, lawful entry into the United States after inspection or authorization by an immigration officer." Critically, this definition connotes present-tense, affirmative action to "go in search of or to try to acquire or gain" a lawful entry into the United States. Mr. Herrera Avila—who is alleged to have entered without inspection about 20 years ago and has been living in the country for decades—is not engaged in any present-tense effort to gain "admission" into the United States. *See* App. 342–45; R. Doc. 14, at 11–14. Therefore, § 1225(b)(2)(A) does not apply to him and does not require his detention without bond.

By contrast, the groups of noncitizens who are "seeking admission" and subject to § 1225(b)(2)(A) underscore the provision's focus on the border and ports of entry. For example, noncitizens who do not have to comply with certain visa requirements, *see* 8 U.S.C. § 1187, may be subject to § 1225(b)(2)(A) if they are seeking to enter and are inadmissible. *See* 8 U.S.C. § 1736 (directing that visa waiver program participant who is an "applicant for admission" must be checked against government databases "at the time the [noncitizen] *seeks admission* to the United States" (emphasis added)). Section 1225(b)(2) also covers a range of noncitizens

who are seeking lawful entry but are inadmissible on other grounds not covered under § 1225(b)(1), for instance: someone on visa waiver program who has an Interpol Red Notice, 8 U.S.C. § 1182(a)(3)(A) (security and related grounds); someone suspected of smuggling, *id.* § 1182(a)(6)(E)(i); someone falsely claiming U.S. citizenship, *id.* § 1182(a)(6)(C)(ii); someone with an expired passport, *id.* § 1182(a)(7)(B)(i)(I); and someone who was previously removed, *id.* § 1182(a)(9)(A)(i). All these individuals are, unlike Petitioner, seeking lawful entry into the United States and thus properly detained under § 1225(b)(2).

## B. The government's interpretation ignores the plain language and context of § 1225(b)(2).

By contrast, the government's attempt to find new and sweeping detention powers in § 1225(b)(2) disregards the statutory text and context. The government's main argument is that because § 1225(a)(1) "deems" Petitioner an "applicant for admission," he therefore must be "seeking admission" for purposes of § 1225(b)(2). *See* Resp. Br. 36–37; *Matter of Yajure-Hurtado*, 29 I. & N. Dec. at 221. But this argument ignores the statutory text and context.

*First*, the government's argument that all "applicants for admission" are necessarily "seeking admission" "violat[es] one of the cardinal rules of statutory interpretation" by rendering parts of § 1225(b)(2)(A) "superfluous." *Castañon-Nava*, 161 F.4th at 1061. If Congress had intended the government's interpretation, the statute could simply read as follows:

32

Subject to subparagraphs (B) and (C), ~~in the case of an alien who is an applicant for admission,~~ if the examining immigration officer determines that an ~~alien seeking~~ **[applicant for]** admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Congress would not have used such complicated language where much simpler text would have achieved the government's preferred result. "If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote." *Texas*, 597 U.S. at 798.[17]

Indeed, the government concedes that its interpretation creates unexplained oddities but asks the Court to ignore them. *See* Resp. Br. 44–45. And at one point in its brief, the government even rewrites the statute by substituting the word "the" for the word "an" before the term "alien seeking admission" in order to equate that term with the preceding reference to "an applicant for admission." *See* Resp. Br. 38 ("Section 1225(b)(2) requires the detention of an 'applicant for admission, if the examining officer determines that *[the]* alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'") (emphasis added). But that is not what the statute says: instead, Congress provided only that "*an* alien seeking admission"—

---

[17] The government's cited cases about surplusage are inapposite because they addressed situations where redundancies were commonly accepted and did not "'render superfluous another part of the same statutory scheme,' as would be the case here." *Castañon-Nava*, 161 F.4th at 1061 (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)).

that is, *an* "applicant for admission" who is also "seeking admission"—is subject to detention under the statute. 8 U.S.C. § 1225(b)(2)(A).

***Second***, the government argues that a person "*applying* for something is necessarily *seeking* it," analogizing to the situation of a person who is "applying for admission" and "seeking admission" to a college or club. Resp. Br. 40–41. But that is a red herring. The dispute is not about whether the action of "*applying* for admission" necessarily means "seeking admission." It is whether being an "*applicant* for admission"—the term of art that Congress used in § 1225(b)(2)(A)— necessarily means the person is also "seeking admission"—the additional condition Congress added in § 1225(b)(2)(A).

Here, Congress did not define being an "applicant for admission" in terms of the act of "seeking" admission. Rather, one is "treated as" or "deemed" an "applicant for admission" by merely being "*present* in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1) (emphasis added). In other words, Congress described being an applicant for admission based on mere presence (or status) alone, whereas the government attempts to read the action of "seeking admission" *into* the definition of "applicant for admission." Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of applicants for admission] but elected not to do so." *Castañon-Nava*, 161 F.4th at 1061.

A more apt analogy is if Congress, in one section of a statute, provided that a "registered voter" is "anyone who is a U.S. citizen, over 18 years of age and who has completed their voter registration form." And then in a later section, Congress wrote that "in the case of an individual who is a registered voter, if an election inspector determines that an individual seeking to vote does not meet the eligibility requirements, the individual must submit to an inspection." In this example, someone who is a "registered voter" is not simultaneously "seeking to vote"—they are two distinct predicates. And it would be strange to read the statute to impose a roaming directive on election inspectors to take identification from any "registered voter" if they are not actually attempting to vote. Rather, the obligation to inspect a "registered voter" is triggered only upon their voting. Similarly here, Congress set forth a general category of person—an "applicant for admission"—who falls within the potential reach of the statute, but said § 1225(b)(2)(A) only applies if such a person is engaging in the activity of "seeking admission."

*Third*, the government's argument with respect to 8 U.S.C. § 1225(a)(3) suffers from the same flaw. The government argues that this provision shows that being an "applicant for admission" is a "way" or "manner" of "seeking admission," such that any alien who is an "applicant for admission" is "seeking admission" for purposes of § 1252(b)(2)(A). Resp. Br. 38–39, 41–42. But that is inconsistent with what Congress did here, which is to deem Petitioner an "applicant for admission"

based merely on his being in the United States, and not based on "seeking admission." *See supra*.

Nor can the government's reading be squared with the text of § 1225(a)(3). Section 1225(a)(3) provides that "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The government argues that the use of the term "or otherwise" means that "the first action is a subset of the second action." Resp. Br. 38–39. But the "second action" is not simply "seeking admission"; it is also "seeking admission or readmission to or transit." 8 U.S.C. § 1225(a)(3). The government surely cannot argue that all applicants for admission are seeking readmission or transit. Instead, the most natural reading is that the "or otherwise" language clarifies *which* applicants for admission are required to be inspected, along with other noncitizens: namely, those who are requesting permission to enter, reenter, or transit through the country.[18]

_____

[18] An analogy illustrates the point. A statute provides: "All persons who are law graduates, or are otherwise seeking to practice, teach, or administer law, must be licensed by the State Bar." The statute would not reasonably be read as implying that all law graduates are seeking to practice, teach, or administer law. Some law graduates may be planning to work in politics, policy, or business. The "otherwise" clause narrows the category of law graduates who must be licensed to those who also wish to practice, teach, or administer law. Similarly, § 1225(a)(3)'s use of "otherwise" does not imply that all applicants for admission are also seeking

*Finally*, the government attempts to avoid the ordinary meaning of "seeking admission" by suggesting that it is a term of art and that "many people who are not actually requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." Resp. Br. 39–40 (quoting *Matter of Lemus-Losa*, 25 I & N. Dec. 734, 743 (BIA 2012)). But the Board in *Lemus-Losa* simply repeats the same error the government makes here by equating the status of being an "applicant for admission" with the action of "seeking admission," despite Congress's choice to use different terms. Moreover, *Lemus-Losa* addressed a different statute, 8 U.S.C. § 1182(a)(9)(A)–(C), that pertains to grounds of inadmissibility. And even in that statute, Congress exhibited its awareness of the difference between a noncitizen who enters unlawfully and one who makes "a request for permission to enter." *Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

## C.  IIRIRA confirms that § 1225(b)(2) does not apply to millions of noncitizens living in the United States.

IIRIRA confirms that § 1225(b)(2) cannot apply to Petitioner. In passing IIRIRA, Congress was acutely concerned about the strain on detention capacity that § 1226(c)'s new detention mandate would impose by requiring the detention of an estimated 45,000 noncitizens subject to removal on criminal grounds each year. *See*

admission, re-admission, or transit. Rather, it narrows the category of applicants for admission who are subject to inspection to those engaging in those actions.

H.R. Rep. No. 104-469, pt. 1, at 118, 120, 123. To address the problem, Congress authorized an option to defer implementation of § 1226(c) for two years while the agency built up its detention capacity—an option the government promptly invoked. IIRIRA § 303(b), 110 Stat. 3009-585 to 3009-587; Doris Meissner, Comm'r, INS to Henry J. Hyde, Chairman, S. Comm. on the Judiciary, Letter Invoking IIRIRA Transitional Period Custody Rules (Oct. 3, 1997).[19]

It is implausible that the same Congress that showed such solicitude regarding § 1226(c)'s detention mandate simultaneously enacted the largest expansion of mandatory detention in U.S. history by imposing detention for *millions* of people under § 1225(b)(2)—without a whisper in the statutory text or congressional record.[20] Surely, "if Congress had such an intent, Congress would have made it explicit in the statute, or at least some of the Members would have identified or mentioned it at some point." *Chisom v. Roemer*, 501 U.S. 380, 396 (1991); *see also Whitman v. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

---

[19] *Available at*: https://perma.cc/HFF9-MY3N.

[20] The estimated population of noncitizens in the United States who entered without inspection was about two million in 1996 and is around six million today. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (estimating that such individuals made up about half of the four million "illegal alien[s]" then living in the United States); Jill Wilson, et al., Cong. Rsch. Serv., R47848, Nonimmigrant Overstays: Overview and Policy Issues, at 1 n.6 (2023).

Despite this incongruity, the government asserts that Congress's decision to put inadmissible noncitizens who entered without inspection on equal footing with arriving noncitizens in their *removal* proceedings means that it must have also subjected entrants to the same mandatory *detention* that applies to arriving noncitizens. Resp. Br. 54–56. But complex legislation like IIRIRA cannot be understood to pursue a single purpose at the expense of all others. *See Luna Perez v. Sturgis Public Schls.*, 598 U.S. 142, 150 (2023) ("[N]o law pursues its purposes at all costs." (citation omitted) (cleaned up)). Congress did make clear that it was subjecting some noncitizens arrested in the interior to mandatory detention—namely, those with predicate crimes—when it enacted § 1226(c). But Congress did not say that it was eliminating the longstanding distinction between border inspection and interior detention or moving entrants into a massively expanded detention mandate under § 1225(b)(2). Indeed, Congress said the opposite and reenacted the same detention rules for entrants in § 1226. *See* H.R. Rep. No. 104-469, pt. 1, at 229. And it had good reason to do so, since applying the rule the government proposes would have overwhelmed the detention system with a directive to put millions of people in mandatory detention—a task that the government was not (and still is not) capable of undertaking.

### D. Pursuing immigration relief is not "seeking admission."

Lastly, in an attempt to give "seeking admission" its own meaning, the government argues in the alternative that an applicant for admission who contests their removal, rather than voluntarily departs, is "seeking admission." Resp. Br. 45–46. But this conclusion is flatly foreclosed by Supreme Court precedent, ignores the statute, and leads to absurd results.

***First***, the Supreme Court in *Sanchez v. Mayorkas*, 593 U.S. 409 (2021), made clear that seeking relief from removal is not the same as "seeking admission." This is because although the most common forms of immigration relief afford a noncitizen "lawful status" in the country, they do not provide an "admission"; the two concepts are "distinct" in immigration law. *Id.* at 415–16. Thus, the Court in *Sanchez* concluded that an individual who had entered the country unlawfully and subsequently received Temporary Protected Status ("TPS") was not constructively "admitted," but instead granted a "lawful status." *Id.*; *id.* at 416 (explaining that "a grant of TPS does not come with a ticket of admission"); *see also id.* at 415–16 (explaining that the same is true of asylum).[21]

---

[21] Other immigration relief—like deferred action (e.g., DACA, 8 C.F.R. § 236.21(c)(1)); withholding of removal, 8 U.S.C. § 1231(b)(3)(A); and protection under the Convention Against Torture, 8 C.F.R. §§ 208.16(c)(4), 208.17(a)— prohibit the effectuation of a final removal order once that order has been entered against a noncitizen. Clearly, such limited relief from removal does not confer an "admission" into the United States.

**Second**, the government's argument is inconsistent with § 1225(b)(2) itself, which applies only to applicants for admission "if the *examining immigration officer* determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). But many applications for relief from removal, including cancellation of removal, are submitted in immigration court and adjudicated by an *immigration judge*, which is expressly not an immigration officer. *Compare id.* § 1101(b)(4), *with id.* § 1101(a)(18). This reflects that § 1225(b)(2)(A) was not meant to apply to people detained in the interior who then seek relief before an immigration judge.

**Third**, the government's understanding of "seeking admission" creates absurd results. Under its theory, individuals who seek no relief and instead opt for voluntary departure—meaning they are certain to leave in a matter of weeks—will be able to request bond. Yet, individuals who are eligible for relief—and, as a result, are the most suitable for release on bond because of their significant ties to the community, lack of criminal history, and other equities—are somehow subject to mandatory detention. It also suggests that eligibility for bond can change over time (for instance, if someone withdraws their application) or depend on the kind of relief a person seeks (e.g., before an immigration officer or immigration judge). But a rule that turns on these factors would make no sense, especially with no evidence that Congress sought to condition access to bond on this basis. The "Court [should] not construe a

statute in a manner that leads to absurd or futile results." *Nixon v. Missouri Mun. League*, 541 U.S. 125, 138 (2004) (citation omitted).

## CONCLUSION

In sum, the government's attempt to find new and sweeping detention powers in § 1225(b)(2), while vastly diminishing the scope of § 1226, flies in the face of text, structure, and history of the detention statutes. And the consequences of its new interpretation, which would undermine the Laken Riley Act while mandating the detention of millions of people like Mr. Herrera Avila, especially warrant this Court's skepticism. The Court should affirm the district court's order granting the writ of habeas corpus.

Dated: January 16, 2026

Respectfully submitted,

Michael K.T. Tan
My Khanh Ngo
Oscar Sarabia Roman
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770
m.tan@aclu.org
mngo@aclu.org
osarabia@aclu.org

Benjamin Casper
Teresa Nelson
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
MINNESOTA
P.O. Box 14720
Minneapolis, MN 55414
Tel.: (612) 274-7790
bcasper@aclu.org
tnelson@aclu.org

*/s/ Judy Rabinovitz*
Judy Rabinovitz
Natalie Behr
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2660
jrabinovitz@aclu.org
IRP_NBehr@aclu.org

David L. Wilson
Cameron Lane Youngs Giebink
Katherine Lourdes Santamaria El
Bayoumi
WILSON LAW GROUP
3019 Minnehaha Avenue
Minneapolis, MN 55406
Tel.: (612) 436-7100
dwilson@wilsonlg.com
cgiebink@wilsonlg.com
ksantamaria@wilsonlg.com

*Counsel for Petitioner-Appellee*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,054 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

Pursuant to 8th Cir. R. 25, I certify that the foregoing brief has been scanned for viruses and is virus free.

*/s/ Judy Rabinovitz*
Judy Rabinovitz
January 16, 2026
*Counsel for Petitioner-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing Certificate with the Clerk for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Judy Rabinovitz*
Judy Rabinovitz
January 16, 2026
*Counsel for Petitioner-Appellee*