**No. 25-3248**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

JOAQUIN HERRERA AVILA,

*Petitioner-Appellee,*

v.

PAMELA BONDI *et al.*,

*Respondents-Appellants.*

On Appeal from the United States District Court
for the District of Minnesota
No. 25-cv-03741 (Tunheim, J.)

## REPLY BRIEF OF APPELLANTS

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant
Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

ANTHONY P. NICASTRO
Assistant Director

RUSSELL J.E. VERBY
Senior Litigation Counsel
Office of Immigration
Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044
Tel: (202) 616-4892

*Additional Counsel on Inside Cover*

BROOKE MAURER
Senior Trial Attorney
Office of Immigration Litigation

ANA H. VOSS
Assistant United States Attorney
District of Minnesota

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT ..................................................................................... 3

    I.    Section 1225(b)(2) mandates detention of aliens, like Petitioner, who are present in the United States without having been admitted. ......................................... 3

        A.    Applicants for Admission are "Seeking Admission." ................................................................ 3

        B.    Section 1226 does not justify ignoring the unambiguous language of Section 1225. .................14

                1.    Section 1226(a) does not Displace §1225(b)'s Clear Text. ...................................15

                2.    Section 1226(c) does not Support Petitioner's Reading. ..................................... 22

        C.    Petitioner's Interpretation Subverts Express Congressional Intent. ............................................28

CONCLUSION ..................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Atl. Richfield Co. v. Christian,*
590 U.S. 1 (2020) ............................................................ 10

*Bankamerica Corp. v. United States,*
462 U.S. 122 (1983) ........................................................ 20

*Barton v. Barr,*
590 U.S. 222 (2020) ......................................... 13, 25, 26

*Costanzo v. Tillinghast,*
287 U.S. 341 (1932) ........................................................ 21

*Demore v. Kim,*
538 U.S. 510 (2003) ....................................................... 22

*Dubin v. United States,*
599 U.S. 110 (2023) ........................................................ 11

*Elkins v. Moreno,*
435 U.S. 647 (1978) ........................................................ 21

*Epic Sys. Corp. v. Lewis,*
584 U.S. 497 (2018) ........................................................ 15

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
545 U.S. 546 (2005) ................................................... 18, 19

*Food Mktg. Inst. v. Argus Leader Media,*
588 U.S. 427 (2019) ........................................................ 18

*INS v. St. Cyr,*
533 U.S. 289 (2001) ........................................................ 21

*Jennings v. Rodriguez,*
581 U.S. 281 (2018) ........................................................ 15

*Kleber v. CareFusion Corp.*,
    914 F.3d 480 (7th Cir. 2019) .......................................................... 4, 6

*Lamie v. U.S. Trustee*,
    540 U.S. 526 (2004) ............................................................................ 9

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .................................................................... 19, 20

*McNeil v. United States*,
    508 U.S. 106 (1993) ............................................................................ 9

*Mejia Olalde v. Noem*,
    2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) .............................. 4, 10

*Montoya v. Holt*,
    2025 WL 3733302 (W.D. Okla. Dec. 26, 2025)................. 4, *passim*

*Pereira v. Sessions*,
    585 U.S. 198 (2018)..........................................................................21

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    556 U.S. 639 (2012)............................................................. 2, *passim*

*Remini St., Inc. v. Oracle USA, Inc.*,
    586 U.S. 334 (2019) ........................................................................ 10

*Rojas v. Olson*,
    2025 WL 3033967 (E.D. Wisc. Oct. 30, 2025) .............................. 10

*South Dakota v. Yankton Sioux Tribe*,
    552 U.S. 329 (1998)........................................................................ 26

*Stenberg v. Carhart*,
    530 U.S. 914 (2000) ......................................................................... 11

*TDX Energy, LLC v. Chesapeake Operating, Inc.*,
    857 F.3d 253 (5th Cir. 2017) ............................................................ 9

*Villarreal v. R.J. Reynolds Tobacco Co.*,
   839 F.3d 958 (11th Cir. 2016) ........................................................ 7

*Wagner v. Fed. Election Comm'n*,
   717 F.3d 1007 (D.C. Cir. 2013) ..................................................... 28

*Winter v. NRDC*,
   555 U.S. 7 (2008) ........................................................................... 2

*Yates v. United States*,
   574 U.S. 528 (2015) .................................................................... 2, 12

*Zemel v. Rusk*,
   381 U.S. 1 (1965) .............................................................................. 21

## ADMINISTRATIVE DECISION

*Matter of Lemus-Losa*,
   25 I. & N. Dec. 734 (BIA 2012).................................................. 10, 11

*Matter of Yajure Hurtado*,
   29 I. & N. Dec. 216 (BIA 2025) ................................................ 21, 29

## STATUTES

### Immigration and Nationality Act of 1952, as amended:

Section 101(a)(13),
   8 U.S.C. § 1101(a)(13) ..................................................................... 8

Section 101(a)(13)(A),
   8 U.S.C. § 1101(a)(13)(A)................................................................ 11

Section 212,
   8 U.S.C. § 1182 ......................................................................... 13, 18

Section 212(a)(2)(A),
   8 U.S.C. § 1182(a)(2)(A) ................................................................ 23

Section 212(a)(3)(B),
   8 U.S.C. § 1182(a)(3)(B) ................................................................ 23

Section 212(a)(6)(C),
  8 U.S.C. § 1182(a)(6)(C) ........................................................ 23, 24

Section 212(a)(7),
  8 U.S.C. § 1182(a)(7) ............................................................. 23, 24

Section 212(d)(5),
  8 U.S.C. § 1182(d)(5) ................................................................ 27

Section 235,
  8 U.S.C. § 1225 .............................................................. 2, *passim*

Section 235(a),
  8 U.S.C. § 1225(a) ...................................................................... 3, 8

Section 235(a)(1),
  8 U.S.C. § 1225(a)(1) ...................................................... 3, *passim*

Section 235(a)(3),
  8 U.S.C. § 1225(a)(3) ....................................................... 1, *passim*

Section 235(a)(4),
  8 U.S.C. § 1225(a)(4) ................................................................. 5, 6

Section 235(b),
  8 U.S.C. § 1225(b) ................................................................. 15, 24

Section 235(b)(1),
  8 U.S.C. § 1225(b)(1) .................................................................. 24

Section 235(b)(1)(A)(i),
  8 U.S.C. § 1225(b)(1)(A)(i) ...................................................... 8, 24

Section 235(b)(1)(A)(iii),
  8 U.S.C. § 1225(b)(1)(A)(iii) .................................................... 8, 25

Section 235(b)(2),
  8 U.S.C. § 1225(b)(2) ....................................................... 3, *passim*

Section 235(b)(2)(A),
    8 U.S.C. § 1225(b)(2)(A)......................................................1, *passim*

Section 235(b)(3),
    8 U.S.C. § 1225(b)(3) ................................................................ 24, 25

Section 236,
    8 U.S.C. § 1226 ......................................................... 2, 14, 19, 21

Section 236(a),
    8 U.S.C. § 1226(a) .............................................................14, *passim*

Section 236(c),
    8 U.S.C. § 1226(c) .............................................................14, *passim*

Section 236(c)(1),
    8 U.S.C. § 1226(c)(1)...................................................................... 24

Section 236(c)(1)(A),
    8 U.S.C. § 1226(c)(1)(A) ........................................................ 23, 25

Section 236(c)(1)(D),
    8 U.S.C. § 1226(c)(1)(D) ........................................................ 23, 25

Section 236(c)(1)(E),
    8 U.S.C. § 1226(c)(1)(E) ........................................................ 26, 27

Section 236(c)(1)(E)(i),
    8 U.S.C. § 1226(c)(1)(E)(i)............................................................ 23

Section 236(c)(1)(E)(ii),
    8 U.S.C. § 1226(c)(1)(E)(ii) .......................................................... 23

Section 237,
    8 U.S.C. § 1227............................................................................. 25

Section 237(a),
    8 U.S.C. § 1227(a) ........................................................................ 18

Sectio 237(a)(1)(A),
   8 U.S.C. § 1227(a)(1)(A) ......................................................................17

Section 240,
   8 U.S.C. § 1229a.......................................................... 3, 13, 20

Section 240(a)(1),
   8 U.S.C. § 1229a(a)(1)........................................................14

Section 240(c)(2)(A),
   8 U.S.C. § 1229a(c)(2)(A) ...............................................13

Section 240B,
   8 U.S.C. § 1229c.................................................................. 18

Section 240B(a)(1),
   8 U.S.C. § 1229c(a)(1)....................................................... 18

Section 242,
   8 U.S.C. § 1252.................................................................17

Section 242(a),
   8 U.S.C. § 1252(a) ............................................................16

Section 242(a)(1),
   8 U.S.C. § 1252(a)(1)........................................................ 18

Section 275,
   8 U.S.C. § 1325.................................................................. 2

Section 275(a),
   8 U.S.C. § 1325(a) ............................................................ 28

## REGULATIONS

8 C.F.R. § 235.3(b)(1)(ii)........................................................ 20

62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) .........................................19

# OTHER AUTHORITIES

Antonin Scalia & Bryan A. Garner,
    *Reading Law: The Interpretation of Legal Text 140* (2012)........7

House Rep. 104-469 (1996) ......................................................................18

House Rep. 104-828 (1996).....................................................................18

## **INTRODUCTION**

The Immigration and Nationality Act requires the Executive to detain any "applicant for admission" who cannot show he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). There is no dispute that Petitioner is an "applicant for admission" and has not shown he is "clearly and beyond a doubt" admissible. The statute's plain text thus resolves this case and requires reversal.

Petitioner's primary contention is that the phrase "seeking admission" must be read in a colloquial way to only encompass aliens who arrive at a port of entry and voluntarily subject themselves to inspection to obtain admission to the United States. That reading defies the statute's clear language. Most notably, Petitioner disregards the import of §1225(a)(3), which makes crystal clear that *all* "applicants for admission" are necessarily "seeking admission" by operation of law under the defined terms adopted by Congress. Ignoring the words Congress actually used, Petitioner urges an agrammatical reading that is at war with numerous other cases interpreting similar language, not to mention the English language.

His reading of "seeking admission" also is internally incoherent—asking the Court to read "seeking" without reference to

the defined term ("admission") *or* the term of art ("applicant for admission") to which it relates. That defies the basic command that a statute's language must be discerned based on "the specific context in which the language is used." *Yates v. United States*, 574 U.S. 528, 537 (2015). Ultimately, Petitioner's interpretation would require disparate treatment Congress never could have intended—favoring aliens who *intentionally* evade inspection and enter the country *in violation of law* by affording them bond hearings, while mandating detention of those who present at a port of entry *in compliance with law*. In Petitioner's view, "no good deed goes unpunished." *Winter v. NRDC*, 555 U.S. 7, 31 (2008). Those that actually commit the crime of illegal entry (8 U.S.C. §1325) are rewarded with access to bond hearings, which their law-abiding counterparts are denied. That is the exact perverse regime Congress sought to abolish through §1225.

Despite §1225's clear text, Petitioner asks the Court to ignore it based on the separate detention authorities in §1226. His arguments based on §1226 rely on inference, conflicting legislative history, and inconsistent Executive interpretations—nothing remotely sufficient to displace the clear terms of §1225. Here, §1225 is directly on point and it is axiomatic that "the specific controls the general." *RadLAX*

*Gateway Hotel, LLC v. Amalgamated Bank*, 556 U.S. 639, 645 (2012).

<u>**ARGUMENT**</u>

**I.     Section 1225(b)(2) mandates detention of aliens, like Petitioner, who are present in the United States without having been admitted.**

The plain language of §1225 dictates that Petitioner is subject to mandatory detention.  Section 1225(a) provides that an alien who is "present in the United States who has not been admitted or who arrives in the United States … shall be deemed … an applicant for admission." 8 U.S.C. §1225(a)(1).  And any such alien "shall be detained for proceedings under [8 U.S.C. §1229a]" if the alien "is not clearly and beyond a doubt entitled to be admitted." *Id.* §1225(b)(2)(A). Petitioner does not dispute that he is an "applicant for admission," and he does not claim to be "clearly and beyond a doubt entitled to be admitted." Therefore, he must be detained pending his removal proceedings.

**A.     Applicants      for     Admission      are     "Seeking Admission."**

Petitioner tries to escape the plain meaning of §1225 based on the phrase "seeking admission" in §1225(b)(2)(A).   According to Petitioner, that phrase requires some "present-tense, affirmative action to 'go in search of or try to acquire or gain' a lawful entry into the United States."   Answering Br. 31.   Respondents have already

3

explained why that interpretation is untenable, Opening Br. 28-35, and Petitioner's brief offers nothing to change that conclusion.

1.   Section 1225(a)(3) makes clear that an "applicant for admission" *is* "seeking admission" for purposes of §1225(b)(2)(A)—no affirmative action is needed.  Opening Br. 18.  That provision states that "all aliens … who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected."  8 U.S.C. §1225(a)(3) (emphasis added).  As Respondents explained, such "'or otherwise' language 'operates as a catchall: the specific items that precede it are meant to be subsumed by what comes after the 'or otherwise'" clause.  *Kleber v. CareFusion Corp.*, 914 F.3d 480, 483 (7th Cir. 2019); *see* Opening Br. 23-24.  Thus, an "applicant for admission" *is* "seeking admission" for purposes of Section 1225(b)(2)(A).  *See Montoya v. Holt*, 2025 WL 3733302, at *8-9 (W.D. Okla. Dec. 26, 2025) ("The word 'otherwise' establishes that 'aliens … seeking admission' is the category to which 'applicants for admission' belong."); *Mejia Olalde v. Noem*, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025).  That is consistent with common sense and everyday English:  A person may "seek" something without "applying" for it, but anyone "applying" for something is necessarily "seeking" it.

Opening Br. 30.

This is not, as Petitioner says, a way of "read[ing]" the phrase "'seeking admission' into the definition of 'applicant for admission.'" Answering Br. 34.  Section 1225(a)(3) does not *equate* "applicant for admission" with aliens "seeking admission"; it provides only that being an "applicant for admission" is *one* "way or manner" of seeking admission.  Opening Br. 26.  "Seeking admission" is a broader category, which is why Congress would not have included that phrase in §1225(a)(1)'s definition of "applicant for admission."  Opening Br. 32; *Montoya*, 2025 WL 3733302, at *9 ("§1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be 'seeking admission.' But it does *not* leave open the possibility that some 'applicants for admission' are not 'seeking admission.'").

Section 1225(a)(4) reinforces reading "applicant for admission" as a way or manner of "seeking admission."  That provision states that "[a]n alien applying for admission may … be permitted to withdraw the application for admission and depart immediately from the United States."  8 U.S.C. §1225(a)(4).  "A plain language reading of the phrase '*applicant* for admission' alongside the phrase '*application* for

admission' lends the inference that the 'application' to be 'withdrawn[]' is that of the 'applicant for admission.'" *Montoya*, 2025 WL 3733302, at *10. That "in turn lends the straightforward inference that 'applicants for admission' [are] apply[ing] for admission until taking the actions prescribed by §1225(a)(4). *Montoya*, 2025 WL 3733302, at *10. That makes sense: Because an alien's status as an "applicant for admission" turns on the alien's presence "*in the United States*," 8 U.S.C. §1225(a)(1) (emphasis added), "depart[ing] ... from the United States" would necessarily "withdraw" status as "applicant for admission," *id*. §1225(a)(4). Thus, an alien is "*applying* for admission" as long as he is an "applicant for admission," and (again) anyone "applying" for admission is necessarily "seeking" it. *Montoya*, 2025 WL 3733302, at *8, *10 ("What individual is 'applying' for a given legal status without 'seeking' such status?").

Petitioner ignores the cases Respondents cited adopting this interpretation of "otherwise" clauses. Opening Br. 23-24. Instead, he insists that "otherwise" clauses serve the opposite function—rather than "what comes *after* the 'or otherwise' clause" "operat[ing] as a catchall," *Kleber*, 914 F.3d at 483 (emphasis added), Petitioner says that what comes after "otherwise" *narrows* what comes before.

Answering Br. 36.  He cites no authority (judicial, scholarly, or otherwise) to support this reading—which effectively rewrites the statute to substitute "and" for "or otherwise."  Indeed, the en banc Eleventh Circuit expressly rejected a near-identical misinterpretation of an "otherwise" clause.  *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (en banc).  And such a reading makes no sense.  For example, no English speaker would understand a doctor's directive to "bike, jog, or otherwise exercise" to *limit* the patient to biking or jogging.[1]

Petitioner's agrammatical reading would also distort the statutory scheme.  On Petitioner's theory, "section 1225(a)(3)'s use of 'otherwise …. narrows which applicants for admission are subject to inspection *to those seeking admission*, readmission, or transit," Answering Br. 36 (emphasis added)—meaning, only those applicants for admission *who also* "go in search of, or try to acquire or gain, lawful entry into the United States after inspection" need be inspected, *id.* at

---

[1] The hypothetical statute Petitioner postulates (at 36 n.18) proves only that the term "otherwise" can be used improperly.  *See Montoya*, 2025 WL 3733302, at *8 ("'Animals that are housecats or otherwise canine'").  Petitioner is free to do so, but this Court must "presume" that Congress "understand[s] … principles of correct English word-choice," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text* 140 (2012).

30.  That cannot be correct: it would mean that §1225(a)'s "inspection" requirement applies only to aliens who *want* to be inspected—*i.e.*, aliens who present at a port of entry.  That would nullify the entire point of having an inspection requirement.  Moreover, the statute plainly contemplates the inspection of *all* unadmitted aliens, not just those arriving at a port of entry: §1225(a)(1)'s definition of "applicant for admission" encompasses all aliens who are "present in the United States [and] ha[ve] not been admitted."  8 U.S.C. §1225(a)(1). Likewise, the expedited removal provision—entitled "Inspection of applicants for admission"—provides for the processing of certain aliens who evaded inspection and have been in the country for up to two years.  8 U.S.C. §1225(b)(1)(A)(i), (iii).

Petitioner retorts that Respondents' reading of §1225(a)(3)'s "otherwise" clause cannot be correct because the provision also refers to "readmission" and "transit."  Answering Br. 35-36.  But an alien who was *once* admitted—*e.g.*, an alien with a nonimmigrant visa authorizing multiple entries—8 U.S.C. §1101(a)(13)—may be "seeking... readmission to... the United States" as an "applicant for admission" *Id*. §1225(a)(3).  Being an applicant for admission may not be the only way for an alien to seek *re*admission, just like it is not

necessarily the only way to "seek admission." Opening Br. 32; *Montoya*, 2025 WL 3733302, at *9 (§1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be 'seeking admission'"). And even if the "otherwise" clause does not apply with perfect precision to "transit," that would not be a license to wholesale rewrite otherwise clear text: "To object that §1225(a)(3)'s syllogism is invalid is an objection to be heard by Congress, not the Court." *Montoya*, 2025 WL 3733302, at *8 n.7; *see Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (while statute may be "awkward" in some respect that does not "make it ambiguous on the point at issue"); *TDX Energy, LLC v. Chesapeake Operating, Inc.*, 857 F.3d 253, 262 (5th Cir. 2017) (applying *Lamie* to adopt reading with "imperfect grammar" over one that gives a term "its opposite meaning").

Ultimately, Petitioner asks the Court to rewrite §1225(a)(3) to require inspection of an "applicant for admission,' *or any other noncitizen*, when they are requesting permission to enter, reenter, or transit through the country." Answering Br. 36. But this Court is "not free to rewrite the statutory text." *McNeil v. United States*, 508 U.S. 106, 111 (1993). Petitioner's approach amounts to a re-write of

§1225(a)(3) on the theory that the provision should be read in the context of the statute's direction to inspect noncitizens at a some specific point in time.   But the statutory text does not impose a temporal or geographic limitation, even though Congress plainly knows how.  Opening Br. 27, 31 (temporal limit for expedited removal).

2.    At a minimum, §1225(a)(3) is treating what comes after the "otherwise" clause as "simply another way of referring to aliens who are applicants for admission."  *Rojas v. Olson*, 2025 WL 3033967, at *8 (E.D. Wisc. Oct. 30, 2025); *see also Mejia Olalde*, 2025 WL 3131942, at *3.  Even if that produces some redundancy in §1225(a)(3) and (b)(2)(A), the canon against surplusage "is not a silver bullet," *Remini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019), because Congress often "employ[s] a belt-and-suspenders approach," *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020)—here, to ensure the broadest possible application of the inspection requirement.  And some redundancy is far superior to Petitioner's reading, which would nullify the entire purpose of having an inspection requirement.

3.    "Seeking admission" thus includes aliens who are "deemed constructive applicants for admission by operation of law [8 U.S.C. §1225(a)(1)]."  *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 7433 n.6

(BIA 2012); *see* Opening Br. 24-25.  Petitioner objects that there is no "evidence" that Congress meant "seeking admission" to be understood in a "specialized way," rather than according to its "ordinary meaning," Answering Br. 37, but the preceding discussion refutes that argument. *See also* Opening Br. 28-29.  Moreover, "seeking admission" must be read in context:  There is no dispute that "applicant for admission" is a term of art.  Answering Br. 34.  And "seeking admission" must be read in harmony with that specialized definition—particularly as both share the defined term "admission." *Accord Dubin v. United States*, 599 U.S. 110, 124 (2023) ("a word is known by the company it keeps").  Just as an alien is an "applicant for admission" even though no literal "application" is filed, so too an alien may be "seeking admission" even though the alien is not literally "go[ing] in search of" admission.

Petitioner's contrary argument that "seeking admission" must be understood *exclusively* according to its "ordinary meaning" is absurd on its own terms.  "Admission" is a defined term, *see* 8 U.S.C. §1101(a)(13)(A), which means it cannot be given its colloquial definition. *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000).  So really, Petitioner is advocating that only one-half of the statutory phrase ("seek") be given a colloquial meaning, and that its meaning be

determined without reference to the technical term comprising the other half of the phrase ("admission") or the term of art ("applicant for admission") to which it relates. But the meaning of statutory language "cannot be determined in isolation," but must be derived "by reference to … the specific context in which that language is used." *Yates*, 574 U.S. at 537. Even if one could supplant defined terms with colloquial usage, Petitioner's argument would necessarily fail: In everyday parlance, Petitioner would undeniably be "seeking admission" by contesting removal and declining to voluntarily depart. *Infra*, pp. 12-13.

4.    Petitioner argues that the Court should reject the statute as written because it would render the phrase "seeking admission" in §1225(b)(2)(A) superfluous. Answering Br. 32-33. Not so. As Respondents explained, when §1225(b)(2)(A) is read consistent with its structure, every phrase has independent meaning, including "seeking admission." Opening Br. 33-34. Petitioner insists that Congress would have used a "simpler" structure if it "had intended the government's interpretation." Answering Br. 32-33. But the same could be said of Petitioner's reading, which renders an entire clause surplusage:

> Subject to subparagraphs (B) and (C), ~~in the case of an alien who is an applicant for admission,~~ if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

And even if there were redundancy under Respondents' reading, that canon cannot be used to "rewrite or eviscerate another portion of the statute contrary to its text," *Barton v. Barr*, 590 U.S. 222, 239 (2020); *see* Opening Br. 34-35.

5.     Finally, even if Petitioner's colloquial reading were correct (and it is not), he is still "seeking admission."  Opening Br. 36-37. Petitioner objects that "seeking relief from removal is not the same as 'seeking admission.'" Answering Br. 40.  That does not matter.  Section 1229a provides that any applicant for admission who is referred to removal proceedings under §1229a, including Petitioner, has the "burden of establishing … that [he] is clearly and beyond a doubt entitled to be admitted and is not inadmissible under section 1182 of this title."  8 U.S.C. §1229a(c)(2)(A).  By operation of statute, an alien referred to §1229a removal proceedings is in the position of "try[ing] to acquire or gain[] lawful entry," Answering Br. 31—at least unless the alien attempts to voluntarily depart.  Opening Br. 31.  Indeed, the entire purpose of a Section 240 removal proceeding is to "decid[e] the

inadmissibility or deportability of an alien."  8 U.S.C. §1229a(a)(1).

Petitioner says this creates "absurd results" because it would mean that "eligibility for bond can change over time … or depend on the kind of relief a person seeks."  Answering Br. 41.  That is a problem for *Petitioner's* interpretation, under which an alien who arrives at a port of entry but requests relief that does not secure "admission" would not be "go[ing] in search of or try[ing[]] to acquire or gain'" admission to the United States.  Answering Br. 30.  Respondents agree:  "[A] rule that turns on these factors would make no sense."  *Id*.  That is why Congress established a simple rule that *all* applicants for admission shall be inspected and detained.

## B. Section 1226 does not justify ignoring the unambiguous language of Section 1225.

Despite its plain text, Petitioner says that §1225(b)(2)(A) must be "confined to individuals apprehended upon inspection at the border" because detention of aliens "'inside the United States'" is governed by the separate authority in §1226, which authorizes DHS to "arrest[] and detain[]" an alien "pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. §1226(a), and which requires mandatory detention of certain aliens, §1226(c).  Answering Br. 22-26F.  At bottom, Petitioner's misguided reading of these

provisions rests on his insistence that they be interpreted in isolation from §1225, but "[i]t is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018).[2]

### 1. Section 1226(a) does not Displace §1225(b)'s Clear Text.

Petitioner appears to concede that §1226(a) is not rendered redundant by Respondents' interpretation of §1225(b)(2)(A) because it indisputably applies to aliens who *have* been admitted to the United States, who are not "applicants for admission" under §1225(b)(2)(A). Opening Br. 38. Nonetheless, Petitioner insists that §1226(a) must be the governing detention statute for *inadmissible* aliens, too, because it

---

[2] As Respondents' have explained, *Jennings v. Rodriguez*, 581 U.S. 281 (2018), did not address the issue in this appeal—either directly or by implication. Opening Br. 42-43. Petitioner does not seriously contest this issue but still tries to use *Jennings* to his advantage based on a single sentence in the Solicitor General's supplemental briefing that characterized §1226(a) consistent with the Government's prior interpretation. Answering Br. 20 n.10. The supplemental brief, however, addressed "whether the Constitution requires the government to provide a bond hearing, or certain additional protections, when removal proceedings and detention incident to those proceedings under 8 U.S.C. 1225(b), 1226(c), or 1226(a) last six months." Supp. Br. for the Petitioners, *Jennings v. Rodriguez*, 2017 WL 430387, at *1-2 (Jan. 31, 2017). That issue about *whether* the Constitution requires certain protections under these statutes is distinct from the question of *who* is covered by each statute. *Jennings* did not decide the latter question.

authorizes detention pending "removal proceedings," which "cover people ... who are charged with being inadmissible after entering the country without inspection." Answering Br. 21-22. That is wrong.

a. To start, "[i]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel*, 566 U.S. at 645; *see* Opening Br. 38. Indeed, Congress often writes broad directives that are narrowed by more specific provisions, either within the same statutory section or across multiple sections in the same enactment. IIRIRA fits squarely within that tradition: To the extent that §1226(a)'s terms may cover aliens who are "applicants for admission" subject to §1225(b)(2)(A), when read in isolation, the latter is plainly the more specific provision and so it "governs." *RadLAX Gateway Hotel*, 566 U.S. at 645.[3]

Regardless, even under Respondents' interpretation of §1225(b)(2)(A), there are aliens for whom inadmissibility is a reason

---

[3] Petitioner says that this interpretation would "up-end[] other aspects of the immigration system" by expanding the number of aliens who "may become eligible for green cards." Answering Br. 28-29. Even if that is true, adjustment of status for parolees is available only "in [the Attorney General's] discretion and under such regulations as he may prescribe." 8 U.S.C. §1255(a). That "future administrations" may abuse the parole authority—like the prior administration did—is not a reason to depart from the statute's clear text.

for their removability and are subject to §1226(a) but who are not "applicants for admission" covered by §1225(b)(2)(A). For example, aliens who are improperly or erroneously admitted because they were "inadmissible" at the time of entry are subject to removal. *See* 8 U.S.C. §1227(a)(1)(A) ("[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable"). Although inadmissible, those aliens were still admitted and so §1226(a), not §1225(b)(2)(A), controls.

Nonetheless, Petitioner says §1226(a) must be read to apply to *all* inadmissible aliens because the predecessor to §1226(a) required detention "[p]ending a determination of *deportability*," 8 U.S.C. §1252 (1995) (emphasis added)—a ground that applied to aliens present in the United States, Opening Br. 6—while the new §1226(a) authorizes detention "pending a decision on whether the alien is to be *removed*," *id.* §1226(a) (emphasis added). That misunderstands Congress's word-choice. Recall that IIRIRA eliminated the prior "deportation" and "exclusion" proceedings and replaced them with the unified "removal" proceeding. Opening Br. 7-8; Answering Br. 5-6. Congress's shift in word-choice from "deportability" in predecessor §1252 to

"removed" in §1226(a) was simply an effort to conform the language of new §1226(a) to the post-IIRIRA lexicon. Petitioner responds that another provision added in IIRIRA—codified at 8 U.S.C. §1229c(a)(1)—uses the term "deportable." Answering Br. 22. But §1229c is referring to *grounds* for removability; IIRIRA preserved the separate categories of "deportable" and "inadmissible." Answering Br. 6-7; *see* 8 U.S.C. §§ 1182, 1227(a). Section 1226(a), by contrast, is referring to the process for removal—*i.e.*, the removal proceedings.

b. Shifting to legislative history, Petitioner seizes upon a single sentence from a committee report, stating that "Section 236(a) restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." House Rep. 104-469, part 1, at 229 (1996); House Rep. 104-828, at 210 (1996) (same); *see* Answering Br. 7, 22. Of course, "legislative history [may] never ... be used to 'muddy' the meaning of 'clear statutory language.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).

Legislative history is especially weak where there are competing or conflicting sources. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Here, the same committee report states that

Congress was replacing the concept of "entry" with "admission" to dispense with the old regime under which "illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings"—including a bond hearing—"that are not available to aliens who present themselves for inspection at a port of entry." House Rep. 104-469 part 1, at 225; *see* Opening Br. 4-5. That purpose is incompatible with Petitioner's expansive interpretation of §1226 as simply "restat[ing]" the prior regime. Opening Br. 19. At a minimum, the legislative history is "murky" and "ambiguous." *Allapattah Servs., Inc.*, 545 U.S. at 568.

c. The same essential problem faces Petitioner's reliance on post-enactment regulations and Executive practice. Answering Br. 11-12, 27-28. Petitioner points to a 1997 interim rule stating that aliens "who are present without having been admitted or paroled ... will be eligible for bond." 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). But Executive interpretation of a statute may inform the interpretive endeavor only when it is "issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 370 (2024). And here, the Executive promulgated regulations in 1997 providing for mandatory

detention consistent with Respondents' interpretation:

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility *shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.*

8 C.F.R. §235.3(b)(1)(ii) (emphasis added); *see* Opening Br. 34. Regardless, the terms of the statute, not agency pronouncements, control. *Loper Bright Enters.*, 603 U.S. at 412-13.

d.     Finally, and for similar reasons, Petitioner's reliance on congressional inaction falls short. Answering Br. 26-27. It is axiomatic that "authority granted by Congress cannot evaporate through lack of administrative exercise." *Bankamerica Corp. v. United States*, 462 U.S. 122, 131 (1983). That is especially true where, as here, the Executive has not wholly "fail[ed] ... to exercise the power it now claims." *Id.* Under prior administrations, the aliens now understood to be subject to §1225(b)(2)(A) were still detainable—just under §1226(a). And every prior administration interpreted and applied §1225(b)(2)(A) to mandate detention of *some* aliens—just a subset of those actually subject to §1225(b)(2)(A). In any event, the Supreme Court has not hesitated to set aside longstanding agency

interpretations and practices, including in the context of IIRIRA itself, when the Executive practice was inconsistent with the statute. *See Pereira v. Sessions*, 585 U.S. 198, 204-05 (2018).

Nor is it probative that Congress did not amend §1225 and §1226 since 1997 to correct the Executive's prior practice.[4]  Congressional acquiescence in an agency interpretation matters only if Congress "fail[s] to repeal or revise" an "interpretation expressly placed on [the] statute." *Zemel v. Rusk*, 381 U.S. 1, 11 (1965); *accord Costanzo v. Tillinghast*, 287 U.S. 341, 345 (1932).  Here, the BIA did not adopt a formal interpretation of §1225(b)(2)(A) until *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).[5]  And the Executive's former pronouncements were, at best, ambiguous. *Supra*, p. 18-20

---

[4] The fact that Congress amended the INA in other respects after 1996 is not helpful to Petitioner.  *Cf.* Answering Br. 28 n.16.  The INA is a "comprehensive and complete code governing all aspects of admission of aliens to this country," *Elkins v. Moreno*, 435 U.S. 647, 664 (1978), and IIRIRA enacted "comprehensive amendments to the [INA]," *INS v. St. Cyr*, 533 U.S. 289, 292 (2001).  That Congress later enacted targeted amendments to the INA cannot plausibly be understood as an endorsement of all the possible disagreements Congress may have with the Executive's implementation and interpretation of such a sprawling statute.

[5] None of the BIA decisions Petitioner cites (at 12) adjudicated the scope of §1226 or §1225(b)(2).

### 2. Section 1226(c) does not Support Petitioner's Reading.

Petitioner fares no better relying on §1226(c), which provides that the Executive "shall take into custody" certain aliens who are deportable or inadmissible for having committed certain specified offenses or engaged in terrorism-related actions. Answering Br. 22-26. According to Petitioner, §1226(a) must apply to "inadmissible" aliens because otherwise "Congress would have had no need to exclude a subset of them from bond-eligibility under §1226(a) in the first place." Answering Br. 23. That is wrong.

a. This argument rests on the false premise that because §1226(c) excludes certain aliens subject to §1226(a)'s discretionary detention that §1226(c) applies *only* to aliens also subject to §1226(a). But a statute's reach may be constrained by another statute that also addresses other issues. Petitioner is thus wrong to assume that Congress subjected the aliens identified in §1226(c) to mandatory detention on the belief they were otherwise covered by §1226(a)—rather than based on Congress's independent desire to ensure that such criminal aliens would be detained. *See Demore v. Kim*, 538 U.S. 510, 517-520 (2003) (recounting congressional focus on detaining criminal aliens).

Besides, the statutory scheme disproves Petitioner's theory that §1226(a) necessarily covers *every* inadmissible alien referenced in §1226(c). For example, the grounds of admissibility listed in §1226(c)(1)(A) and (D) would apply to aliens arriving at a port of entry—the same aliens Petitioner agrees are subject to §1225(b)(2)(A). The ground listed in §1226(c)(1)(A) renders inadmissible any alien who has committed "a violation of … any law or regulation of a State, the United States, or a foreign country related to a controlled substance," 8 U.S.C. §1182(a)(2)(A), and the ground listed in §1226(c)(1)(D) renders inadmissible an alien for past terrorism-related activities or associations, *id*. §1182(a)(3)(B). An alien who presents at a port of entry and is inadmissible on one of these grounds falls squarely within the terms of §1226(c). But if §1226(c) did not exist, those aliens would not be subject to §1226(a); even under *Petitioner's* reading, they would be covered by §1225(b)(2)(A).

The same is true of the grounds of inadmissibility added by the Laken Riley Act: §1182(a)(6)(C) and (a)(7). *See* 8 U.S.C. §1226(c)(1)(E)(i)-(ii). Under Petitioner's reading, those aliens would otherwise be subject to §1226(a)'s discretionary detention. That is refuted by the expedited removal provision, which applies to (1) aliens

arriving in the United States *and* (2) aliens who "ha[ve] not been admitted or paroled into the United States" and have been present in the United States for less than two years—but *only* if they are "inadmissible under section 1182(a)(6)(C) or 1182(a)(7)." 8 U.S.C. §1225(b)(1)(A)(i), (iii). And both parties agree that §1225(b)(1) mandates detention. Answering Br. 9. The upshot: §1226(a)'s *discretionary* detention regime does not apply to the aliens subject to §1225(b)(1) expedited removal, even though the latter *may also* be addressed by §1226(c).

The preceding point refutes Petitioner's argument that the Laken Riley Act—which added subparagraph (E) to §1226(c)(1)—"makes clear that §1226(c) is the exception to the general rule" that *all* inadmissible aliens are eligible for bond under §1226(a). Petitioner's reliance on the Laken Riley Act is further undermined by the fact that it also amended §1225(b) to provide a cause of action for States in the event the federal government "violat[es] the detention and removal requirements under paragraph (1) or (2)." Pub. L. No. 119-1, §3, 139 Stat. 3, 4 (Jan. 29, 2025) (codified at 8 U.S.C. §1225(b)(3)). If §1225(b)(2)(A) really were limited to aliens voluntarily presenting at a port of entry for inspection, there would have been little reason to

worry that the Executive would not enforce the "detention ... requirements" in that provision.  8 U.S.C. §1225(b)(3).

b.     Otherwise, Petitioner's remaining arguments regarding §1226(c) boil down to an objection that Respondent's reading of §1226(c) renders portions of it redundant and/or fail to explain why Congress wrote the law as it did.  Answering Br. 23-26.  But legislation often does not fit into neatly compartmentalized boxes, and Congress often takes a belt-and-suspenders approach to be "doubly sure." *Barton*, 590 U.S. at 239.  Section 1226(c) is no different.  Besides, as Respondents explained, Section 1226(c) applies to a number of aliens *not* subject to §1225(b)(2)(A).  Opening Br. 36.  Petitioner objects to "describing noncitizens who were erroneously admitted as 'inadmissible'" because they are "subject to the grounds of deportability in 8 U.S.C. §1227."  Answering Br. 25.  But the portions of §1226(c) that apply to inadmissible aliens, *see* 8 U.S.C. §1226(c)(1)(A), (D), "still operate when an alien is found erroneously admissible."  *Montoya*, 2025 WL 3733302, at *11.

In the end, Petitioner's reliance on partial redundancy between §1225(b)(2)(A) and §1226(c) ignores the Supreme Court's recognition that "[r]edundancies are common in statutory drafting" and are "not a

license to rewrite or eviscerate another portion of the statute contrary to its text," *Barton*, 590 U.S. at 239. And that is particularly true of the Laken Riley Act, which was enacted nearly three decades after §1225(b)(2) and §1226(c) became law. *See* Opening Br. 37-38; *see also Montoya*, 2025 WL 3733302, at *12 ("the Supreme Court 'ha[s] often observed the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one" (quoting *South Dakota v. Yankton Sioux Tribe*, 552 U.S. 329, 355 (1998)). And the canon is weaker still when there is overlap under either possible interpretation. Opening Br. 38-39. Petitioner disputes that the Laken Riley Act overlaps with §1225(b)(2)(A) under his reading of §1225(b)(2)(A) because "aliens who arrive in the country at a port of entry" are "subject to mandatory detention under §1225(b)(2)." Answering Br. 26. That makes no sense. *By its terms*, the Laken Riley Act applies to aliens who arrive at a port of entry and are inadmissible on certain grounds, *see* 8 U.S.C. §1226(c)(1)(E), and those same aliens also are covered by §1225(b)(2)(A) under Petitioner's reading. The fact that §1225(b)(2)(A) governs such aliens does not mean the language of the Laken Riley Act does not also apply; it just means that the overlapping portion is rendered redundant.

Finally, to the extent there is overlap, §1226(c) and the Laken Riley Act serve the independent function of prohibiting the parole resulting in the release of aliens who are removable under the specified provisions and who meet the offense criteria. 8 U.S.C. §1226(c)(1)(E); *see* Opening Br. 12, 37, 39. Petitioner's responses to this point are contradictory. On one hand, Petitioner says Respondents' reading cannot be correct because it could make more aliens eligible for parole even though "Congress enacted the [Laken Riley Act] precisely to avoid" the scenario in which criminal aliens covered by §1226(c) "would become eligible for release on parole under §1182(d)(5)." Answering Br. 24. On the other, he objects that if Congress had intended for §1226(c), and specifically the Laken Riley Act, to "remove[] the option of parole" for those aliens it covers, it would have "either amended §1225 itself or enacted exceptions to the parole statute, §1182(d)(5)—not amended §1226(c)." Answering Br. 25.

Petitioner cannot have it both ways and, in any event, neither objection has merit. The first critique rests on the false premise that §1225(b)(2)(A) controls where it overlaps with §1226(c). Answering Br. 24. Because §1226(c) is the more specific provision, it governs to the extent it overlaps with §1225(b)(2)(A). *See RadLAX Gateway*

27

*Hotel*, 556 U.S. at 645. The second critique reduces to a dispute about how Congress chose to achieve its legislative objective. But "there are many ways to skin a cat," *Wagner v. Fed. Election Comm'n*, 717 F.3d 1007, 1012 (D.C. Cir. 2013), and Congress's decision to include a restriction on a release authority in a statute that mandates detention is hardly "a winding path of connect-the-dots provisions." Answering Br. 26.

### C. Petitioner's Interpretation Subverts Express Congressional Intent.

Petitioner's reading directly subverts one of Congress's express objectives in enacting IIRIRA—to eliminate the preferential treatment of aliens who had entered the country unlawfully vis-à-vis those who presented themselves at a port-of-entry for inspection. Opening Br. 7-8, 42-44. After all, the vast majority of aliens who have "arrive[d] in the United States" outside a port of entry or are already "present in the United States" without admission are not "go[ing] in search of … lawful entry into the United States after inspection," Answering Br. 31; they *intentionally evaded* inspection and entered the United States contrary to law. 8 U.S.C. §1325(a). So, under Petitioner's reading of §1225, the millions of aliens who have deliberately violated U.S. law are entitled to receive a bond hearing, while aliens who willingly present

28

themselves at a port of entry to "try to acquire or gain[] lawful entry" (Answering Br. 31) *in accordance with law* are subject to mandatory detention. This Court should reject such a perverse regime that so clearly abrogates Congress's objective.

Petitioner does not dispute this is the consequence of his argument, nor that in enacting IIRIRA Congress meant to eliminate the existing system that afforded "greater procedural and substantive rights ... in deportation proceedings" to aliens who successfully entered the country illegally. Opening Br. 5-6 (quoting *Hurtado*, 29 I. & N. Dec. at 223). Nonetheless, Petitioner tries to separate preferential treatment in "removal proceedings" from preferential treatment in detention—but the detention authorized is *pending removal proceedings*; the two are intertwined. *See* 8 U.S.C. §1225(b)(2)(A). Petitioner offers no theory why a Congress determined to eliminate favoritism toward lawbreakers would have preserved that favoritism for something so significant as detention.

## CONCLUSION

The Court should reverse the district court's order granting the writ of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BENJAMIN HAYES
*Senior Counsel to the Assistant Attorney General*

ANTHONY P. NICASTRO
Assistant Director

  *s/Russell J.E. Verby*
RUSSELL J.E. VERBY
Senior Trial Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-4892

January 23, 2026          *Counsel for Respondents-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,009 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Georgia font.

3.    The electronic version of this brief has been scanned for viruses and is virus-free.


*s/ Russell J.E. Verby*
RUSSELL J.E. VERBY

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on January 23, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 *s/ Russell J.E. Verby*
RUSSELL J.E. VERBY