No. 25-3248

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

Joaquin HERRERA AVILA,

*Petitioner–Appellee,*

v.

Todd BLANCHE, Acting Attorney General; *et al.*,

*Respondents–Appellants.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
No. 0:25-cv-03741-JRT-SGE
Hon. John R. Tunheim

# PETITIONER – APPELLEE'S
# PETITION FOR REHEARING EN BANC

David L. Wilson
Cameron Lane Youngs Giebink
Katherine Lourdes Santamaria El
Bayoumi
WILSON LAW GROUP
3019 Minnehaha Avenue
Minneapolis, MN 55406
dwilson@wilsonlg.com
cgiebink@wilsonlg.com
ksantamaria@wilsonlg.com

Michael K.T. Tan
My Khanh Ngo
Oscar Sarabia Roman
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
m.tan@aclu.org
mngo@aclu.org
osarabia@aclu.org

Benjamin Casper
Teresa Nelson
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
MINNESOTA
P.O. Box 14720
Minneapolis, MN 55414
bcasper@aclu.org
tnelson@aclu.org

Judy Rabinovitz
Natalie Behr
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
jrabinovitz@aclu.org
IRP_Nbehr@aclu.org

*Counsel for Petitioner-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND RULE 40(B)(2) STATEMENT ......................................1

STATEMENT OF THE CASE..............................................................................3

    I. Statutory and Legal Background....................................................................3

    II. Procedural Background................................................................................5

ARGUMENT .......................................................................................................7

    I. The Panel Majority's Decision Conflicts with Decisions of the Second, Sixth, and Eleventh Circuits. .......................................................................7

    II. The Panel Majority Failed to Properly Account for Supreme Court Precedent in *Jennings* and *Preap*...........................................................13

    III. This Case Presents Questions of Exceptional Importance. ........................16

CONCLUSION...................................................................................................17

CERTIFICATE OF COMPLIANCE....................................................................19

CERTIFICATE OF SERVICE ............................................................................20

Appellate Case: 25-3248    Page: 3    Date Filed: 05/26/2026 Entry ID: 5643917

**Cases**                                                                 **Page(s)**

*Abramski v. United States*,
  573 U.S. 169 (2014) ........................................................................12

*Avila v. Bondi*,
  170 F.4th 1128 (8th Cir. 2026) .................................................*passim*

*Barbosa da Cunha v. Freden*,
  --- F. 4th ----, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr.
  28, 2026) ..............................................................................*passim*

*Buenrostro-Mendez v. Bondi*,
  166 F.4th 494 (5th Cir. 2026) .................................................6, 13, 17

*Castañon-Nava v. DHS*,
  --- F.4th ----, No. 25-3050, 2026 WL 1223250 (7th Cir. May 5,
  2026) .............................................................................................13

*Feliciano v. Dep't of Transp.*,
  605 U.S. 38 (2025)..........................................................................8

*Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*,
  --- F.4th ----, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6,
  2026) ..............................................................................*passim*

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)...............................................................*passim*

*Learning Res., Inc. v. Trump*,
  146 S. Ct. 628 (2026)......................................................................3

*Lopez-Campos v. Raycraft*,
  --- F.4th ----, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11,
  2026) ..............................................................................*passim*

*Nielsen v. Preap*,
  586 U.S. 392 (2019)..............................................................2, 3, 15, 16

*In re Pre-Filled Propane Tank Antitrust Litig.*,
  860 F.3d 1059 (8th Cir. 2017) .......................................................14

Appellate Case: 25-3248     Page: 4     Date Filed: 05/26/2026 Entry ID: 5643917

*S.A.A. v. Geisler*,
  127 F.4th 1133 (8th Cir. 2025) ...............................................................16

*Sturgeon v. Frost*,
  587 U.S. 28 (2019) ...................................................................................8

*Whitman v. Am. Trucking Assocs.*,
  531 U.S. 457 (2001) ...............................................................................16

*Williams v. Taylor*,
  529 U.S. 420 (1949) .................................................................................9

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ...............................................................................12

**Statutes**

8 U.S.C. § 1101(a)(13)(A) .............................................................................8

8 U.S.C. § 1182(a)(6)(A)(i) .....................................................................4, 10

8 U.S.C. § 1182(d)(5)(C) ..............................................................................4

8 U.S.C. § 1225 ...............................................................................4, 6, 14

8 U.S.C. § 1225(a)(1) ...............................................................................6, 9

8 U.S.C. § 1225(a)(2) ....................................................................................8

8 U.S.C. § 1225(b)(1) ..................................................................................13

8 U.S.C. § 1225(b)(2) ..........................................................................2, 6, 11

8 U.S.C. § 1225(b)(2)(A) ....................................................................*passim*

8 U.S.C. § 1225(b)(2)(B)(iii) .......................................................................8

8 U.S.C. § 1226 .................................................................................*passim*

8 U.S.C. § 1226(a) .............................................................................*passim*

8 U.S.C. § 1226(c) ....................................................................3, 10, 11, 15

8 U.S.C. § 1226(c)(1)(E)(i) ........................................................................10

Appellate Case: 25-3248     Page: 5     Date Filed: 05/26/2026 Entry ID: 5643917

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104–208, 110 Stat. 3009 (1996) ..................................................................3

**Rules & Regulations**

8 C.F.R. § 235.3(c)(1) ..................................................................4

8 C.F.R. § 1003.19(a) ..................................................................4

8 C.F.R. § 1236.1(d) ..................................................................4

62 Fed. Reg. 10,312 (Mar. 6, 1997)..................................................................4

Fed. R. App. P. 40(b)(2)(B) ..................................................................2

Fed. R. App. P. 40(b)(2)(C)..................................................................2

Fed. R. App. P. 40(b)(2)(D)..................................................................3

**Other Authorities**

David J. Bier, *5% of People Detained by ICE Have Violent Convictions, 73% No Convictions*, CATO Institute (Nov. 25, 2025), https://www.cato.org/blog/5-ice-detainees-have-violent-convictions-73-no-convictions ..................................................................17

H.R. Rep. No. 104-469, pt. 1 (1996) ..................................................................5, 12

Jill Wilson, et al., Cong. Rsch. Serv., R47848, *Nonimmigrant Overstays: Overview and Policy Issues* (2023)..................................................................5

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)..................................................................5

Appellate Case: 25-3248      Page: 6      Date Filed: 05/26/2026 Entry ID: 5643917

## INTRODUCTION AND RULE 40(B)(2) STATEMENT

Petitioner-Appellee Joaquin Herrera Avila ("Petitioner") seeks rehearing en banc on one fundamental issue: what immigration detention statute governs millions of noncitizens living in the country who have not been admitted. For nearly three decades, Congress, the courts, and the Executive understood the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226, to authorize the detention of noncitizens arrested inside the country for removal proceedings and permit their release on bond.

But beginning last July, Respondents-Appellants ("Respondents") broke with this well-established understanding, asserting instead that a different provision—8 U.S.C. § 1225(b)(2)(A)—requires the detention of all noncitizens who entered the country without inspection, even though that provision by its terms applies only to noncitizens at the border who are "seeking admission" *into* the country. *Id*. Respondents' newfound rule requires the detention of noncitizens who, like Petitioner, pose no flight risk or danger and have resided in the country for years. It would authorize the largest detention initiative in U.S. history, based on "a novel interpretation of 'alien seeking admission' that eluded the courts and five previous presidential administrations." *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) (Erickson, J., dissenting).

1

The Panel majority erroneously upheld Respondents' new reading of the statute, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), and should be corrected for three reasons.

First, the Panel majority's decision conflicts with recent decisions from the Second, Sixth, and Eleventh Circuits. Fed. R. App. P. 40(b)(2)(C). Those three courts rejected Respondents' arguments and found that § 1225(b)(2)(A) does not authorize the detention of noncitizens like Petitioner. *See Barbosa da Cunha v. Freden*, --- F. 4th ----, No. 25-3141-PR, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, --- F.4th ----, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, --- F.4th ----, No. 25-1965, 2026 WL 1283891, at *1 (6th Cir. May 11, 2026).

Second, the Panel majority's reasoning conflicts with two decisions of the Supreme Court setting forth its understanding of the statutes. Fed. R. App. P. 40(b)(2)(B). In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court explained that § 1225(b)(2) applies to "certain aliens seeking admission into the country," and § 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of [their] removal proceedings." *Id.* at 289. Yet the Panel majority disregarded this explication of the statutes. The Panel majority's reasoning also conflicts with *Nielsen v. Preap*, 586 U.S. 392 (2019), which clarified the

2

relationship between the crime-based mandatory detention provisions in § 1226(c) and the general detention authority in § 1226(a), *id.* at 409, and supports Petitioner's interpretation.

Finally, this case involves a matter of exceptional importance. Fed. R. App. P. 40(b)(2)(D). Respondents seek authority to detain millions of noncitizens living in the United States without access to the most basic check against arbitrary detention: a bond hearing. The Panel majority endorsed a detention policy based on a novel and atextual reading of a statute that nowhere grants the Executive such power. Indeed, "the fact that no President has ever found such power in [the Act] is strong evidence that it does not exist." *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 643 (2026).

The full Court should rehear this case to make clear that Congress did not authorize Respondents' new sweeping detention regime.

## STATEMENT OF THE CASE

### I. Statutory and Legal Background

This case concerns two detention statutes enacted in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104–208, 110 Stat. 3009 (1996). Section 1226 is the detention authority for noncitizens who are "already in the country." *Jennings*, 583 U.S. at 289. It authorizes detention and bond "pending a decision on whether the alien is to be removed," 8 U.S.C. § 1226(a), and

Appellate Case: 25-3248     Page: 9     Date Filed: 05/26/2026 Entry ID: 5643917

includes noncitizens, like Petitioner, who are charged with inadmissibility for having entered the country without inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

By contrast, § 1225 operates "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is inadmissible," *Jennings*, 583 U.S. at 287. 8 U.S.C. § 1225(b)(2)(A) provides:

> in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings before an immigration judge].

(emphasis added). Noncitizens detained under § 1225(b)(2)(A) are ineligible for bond and are limited to requesting release from the Department of Homeland Security ("DHS")—the jailing authority—through a discretionary grant of parole. *See* 8 U.S.C. § 1182(d)(5)(C).

Shortly after IIRIRA's enactment, the Executive issued regulations in March 1997 confirming that noncitizens arrested inside the country and placed in removal proceedings fall under § 1226. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d); *see also* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). The regulations allow such noncitizens to request bond hearings before immigration judges, where they receive an individualized assessment of flight risk and danger. By contrast, the regulation implementing § 1225(b)(2)(A) applies mandatory detention to "arriving alien[s]." 8 C.F.R. § 235.3(c)(1).

4

The Executive consistently applied the detention statutes this way for nearly thirty years. But starting in July 2025, Respondents reversed course, announcing— first in DHS guidance, *see Barbosa da Cunha*, 2026 WL 1146044, at *2, and then in Board of Immigration Appeals precedent, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)—that noncitizens who entered without inspection were now subject to mandatory detention under § 1225(b)(2)(A). The population of noncitizens who entered without inspection was around two million in 1996 and is around six million today.[1]

## II.    Procedural Background

Petitioner, Joaquin Herrera Avila, is a law-abiding, long-time resident who has lived in the United States for nearly 20 years before he was taken into ICE custody in August 2025 following a traffic stop. *Avila*, 170 F.4th at 1138 (Erickson, J., dissenting). He is one of countless noncitizens denied bond based on the government's new detention policy. *Id*. Petitioner filed a habeas petition challenging his mandatory detention under § 1225(b)(2)(A). *Id*. at 1132. The district court granted his petition and ordered a bond hearing under § 1226(a), at which the immigration judge found he posed neither a danger nor a flight risk and granted release on $7,500 bond. *Id*.

---

[1] *See* H.R. Rep. No. 104-469, pt. 1, at 111 (1996); Jill Wilson, et al., Cong. Rsch. Serv., R47848, *Nonimmigrant Overstays: Overview and Policy Issues*, at 1 n.6 (2023).

Appellate Case: 25-3248    Page: 11    Date Filed: 05/26/2026 Entry ID: 5643917

The Panel majority reversed the district court, over Judge Erickson's dissent. *Avila*, 170 F.4th at 1138. The Panel majority, like Respondents, relied on a provision of IIRIRA that "deem[s]" an "alien present in the United States who has not been admitted" an "applicant for admission" for purposes of the INA. 8 U.S.C. § 1225(a)(1). Because the Panel majority believed an "alien who is an 'applicant for admission' is also 'seeking admission' under § 1225(b)(2)," it concluded that noncitizens like Petitioner had to be detained. *Avila*, 170 F.4th at 1133. The Panel majority agreed with the Fifth Circuit that, "using the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission,'" those terms were essentially "synonymous." *Id*. at 1134–35 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026)). The Panel majority also relied on its understanding of congressional purpose, and rejected Petitioner's arguments based on text, context, purpose, statutory history, and three decades of agency practice. *Id.* at 1134–38.

Judge Erickson dissented, concluding that the majority's "interpretation is not supported by the plain meaning of 'seeking,' the context of the INA, or the history of the IIRIRA." *Id*. at 1138 (Erickson, J., dissenting). He pointed out that the majority's reasoning led to superfluity in § 1225(b)(2)(A), as well as other provisions in the INA. *Id.* at 1138–40 (Erickson, J., dissenting). Judge Erickson also observed that "[f]ive presidential administrations, including the first Trump administration . . . interpreted § 1225 to apply only to those arriving at the border," *id.* at 1140

6

(Erickson, J., dissenting), and that the established understanding of the detention statutes adhered to the longstanding distinction between noncitizens apprehended at the border and those living in the country, *see id*. at 1140–41 (Erickson, J., dissenting).

## ARGUMENT

I. **The Panel Majority's Decision Conflicts with Decisions of the Second, Sixth, and Eleventh Circuits.**

Since the Panel majority rendered its decision, three circuit courts have arrived at the opposite conclusion, holding that § 1225(b)(2)(A) does not apply to noncitizens like Petitioner. *See Barbosa da Cunha*, 2026 WL 1146044, at *2; *Hernandez Alvarez*, 2026 WL 1243395, at *1; *Lopez-Campos*, 2026 WL 1283891, at *13. All three courts explained the errors in the Panel majority's reasoning and adopted reasoning consistent with Judge Erickson's dissent.

In *Barbosa da Cunha*, the Second Circuit unanimously held that § 1225(b)(2)(A) does not apply to noncitizens who are arrested inside the United States after entering the country without inspection years ago. 2026 WL 1146044, at *2. Based on the plain text, the Second Circuit explained that § 1225(b)(2)(A) applies "only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission.'" *Id*. at *5. And, while "Petitioner may be an 'applicant for admission,' [] he is not 'seeking admission'" consistent with how "'admission' is defined by statute as 'the lawful entry of the alien into the United States after

7

inspection and authorization.'" *Id.* (citing 8 U.S.C. § 1101(a)(13)(A)); *accord Hernandez Alvarez*, 2026 WL 1243395, at *8 (adopting same reading of § 1225(b)(2)(A)); *Lopez-Campos*, 2026 WL 1283891, at *4 (same).

The Second Circuit observed that the Panel majority "mistakenly assume[d] that the statute uses the ordinary meaning of 'applicant for admission,'" when it actually "uses 'applicant' in a 'specialized' way." *Id.* at *7 (quoting *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025)). As a result:

> Congress here deemed, "abracadabra-style," "applicant for admission" to cover noncitizens who literally cannot be applying for or seeking "admission." By contrast, the statute is silent on the meaning of "seeking" and "applying" and does not establish a legal fiction as to those terms, leaving them with their ordinary meanings. We therefore cannot "abracadabra-style" deem Petitioner to be "seeking admission."

*Id.* (quoting *Sturgeon v. Frost*, 587 U.S. 28, 47 (2019)). The Second Circuit further explained that because Congress used "a statutory term of art for 'applicant for admission' but not for 'seeking admission,' [] the analogy to an applicant for college . . . is inapposite." *Id.* The Second Circuit also dismissed the Panel majority's reliance on stowaways to support its interpretation, noting—as Judge Erickson had—that: "the *Avila* majority started from the premise that a stowaway could be an 'applicant for admission' but for Section 1225(b)(2)(B)(iii), even though that possibility is flatly foreclosed by Section 1225(a)(2)"; and, "the *Avila* majority decided without basis that a stowaway 'unquestionably' cannot seek lawful entry." *Id.* at *13; *see also Avila*, 170 F.4th at 1138 n.6 (Erickson, J., dissenting).

8

Similarly, in *Hernandez Alvarez*, the Eleventh Circuit was "unpersuaded by the Government's re-interpretation of § 1225(b)(2)(A)." 2026 WL 1243395, at *1. Addressing a key aspect of the Panel majority's statutory analysis, the Eleventh Circuit explained that § 1225(b)(2)(A)'s "grammatical structure . . . outlines two conditions with differing grammatical frameworks, so that each must be independently met." *Id.* at *9. "Most obviously, both 'applicant for admission' and 'seeking admission' are introduced by *separate* conditional phrases." *Id.*; *contra Avila*, 170 F.4th at 1134. Echoing Judge Erickson's reasoning, the Eleventh Circuit concluded that "[t]he Government's proffered reading also renders the phrase 'an alien seeking admission' surplusage in the operation of § 1225(b)(2)(A), 'an interpretative no-no.'" *Hernandez Alvarez*, 2026 WL 1243395, at *10 (citations omitted).

In *Lopez-Campos*, the Sixth Circuit similarly underscored how the government's interpretation violates canons of statutory interpretation: that "when Congress deliberately uses different words, we presume those words to have different meanings," and that "every word and every provision is to be given effect." 2026 WL 1283891, at *4 (citations omitted) (cleaned up). Moreover, because "[§] 1225(a)(1) sufficiently indicates Congress's intent for the phrase 'applicant for admission' to bear a meaning different from any ordinary meaning," *id*. at *8 (quoting *Williams v. Taylor*, 529 U.S. 420, 43 (1949)), the government cannot resort

9

to ordinary meanings and assert that "every 'applicant for admission' is an 'alien seeking admission,'" *id*.

The Second and Eleventh Circuits also explained how the government's reading nullifies other parts of the statutory scheme, as Judge Erickson noted. *See Avila*, 170 F.4th at 1140 (Erickson, J., dissenting). As an initial matter, "the government's interpretation reduces the applicability of Section 1226(a)" to only deportable noncitizens even though Congress specifically wrote § 1226(a) to cover not only those noncitizens charged with deportability, but also *inadmissibility*. *Barbosa da Cunha*, 2026 WL 1146044, at \*16. "[Section] 1226(a) authorizes DHS to detain any alien 'pending a decision on whether the alien is to be removed from the United States,'" and "[t]his language applies to both admitted and unadmitted aliens." *Hernandez Alvarez*, 2026 WL 1243395, at \*15 (quoting § 1226(a)).

"The government's interpretation also renders superfluous much of Section 1226(c), including amendments to that provision in the Laken Riley Act, which was passed by Congress in 2025," *Barbosa da Cunha*, 2026 WL 1146044, at \*16, and specifically "targeted aliens who are inadmissible for entering without inspection," *Hernandez Alvarez*, 2026 WL 1243395, at \*17 (citing 8 U.S.C. §§ 1226(c)(1)(E)(i), 1182(a)(6)(A)(i)). As Judge Erickson, the Second Circuit, and the Eleventh Circuit explained, Congress would not have targeted inadmissible noncitizens who entered without inspection in § 1226(c) if they were already subject to mandatory detention

10

under § 1225(b)(2)(A). *See Avila*, 170 F.4th at 1140 (Erickson, J., dissenting); *Barbosa da Cunha*, 2026 WL 1146044, at \*16; *Hernandez Alvarez*, 2026 WL 1243395, at \*17.

All three circuits likewise explained how the text and history of IIRIRA refutes the government's newfound authority. Like Judge Erickson, they noted "Congress's decision when it passed the IIRIRA to authorize deferred implementation of § 1226(c) for two years while the agency increased its detention capacity . . . while making no such provision for implementation of § 1225(b)(2)." *Avila*, 170 F.4th at 1140 (Erickson, J., dissenting). As the Sixth Circuit echoed:

> Adopting the government's view would therefore introduce an incongruent wrinkle: Congress carefully planned for an estimated tens of thousands of additional mandatory detainees under § 1226(c), and yet, in the very same statute, did nothing to address the millions of noncitizens that would be mandatorily detained under § 1225(b)(2)(A).

*Lopez-Campos*, 2026 WL 1283891, at \*5; *see also Hernandez Alvarez*, 2026 WL 1243395, at \*19 ("Congress was also keenly aware of the limited detention resources available when drafting IIRIRA."); *Barbosa da Cunha*, 2026 WL 1146044, at \*18 ("The government offers no explanation for why the same Congress that was so concerned with the detention of 100,000 people under Section 1226(c) would have turned a blind eye to the consequences of mandating detention for all applicants for admission under Section 1225"); *id*. at \*26 (Cabranes, J., concurring) (similar). Moreover, Congress's choice was consistent with its intent to only "alter[] '*certain*

11

*aspects*'" of the prior regime as to a noncitizen's status in removal proceedings—not to upend the rules for detention for people like Petitioner. *Barbosa da Cunha*, 2026 WL 1146044, at *17 (citing H.R. Rep. No. 104-469, pt. 1, at 225); *see also Avila*, 170 F.4th at 1139 (Erickson, J., dissenting); *Hernandez Alvarez*, 2026 WL 1243395, at *19; *Lopez-Campos*, 2026 WL 1283891, at *11.

Lastly, the three circuits, like Judge Erickson, gave due weight to the government's prior interpretation of the detention statutes, in both contemporaneous regulations and nearly thirty years of practice, to afford Petitioner bond. *See Lopez-Campos*, 2026 WL 1283891, at *6 ("The government's almost three decades of practice 'is powerful evidence that interpretating [§ 1225(b)(2)(A)] in [this] way is natural and reasonable.'" (quoting *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting))); *Hernandez Alvarez*, 2026 WL 1243395, at *20 (same); *Barbosa da Cunha*, 2026 WL 1146044, at *19–21 (discussing prior executive practice). This approach, moreover, conforms to the long history and tradition in the immigration system of distinguishing "between an alien who has effected an entry into the United States and one who has never entered." *Avila*, 170 F.4th at 1140 (Erickson, J., dissenting) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

Appellate Case: 25-3248    Page: 18    Date Filed: 05/26/2026 Entry ID: 5643917

As it stands today, three of five circuits to rule on the matter have sided with Petitioner.[2] This Court should grant rehearing en banc to bring its decisions in line with the majority of circuits to have addressed this question.

## II. The Panel Majority Failed to Properly Account for Supreme Court Precedent in *Jennings* and *Preap*.

The Panel majority's decision also warrants en banc review because it is inconsistent with two decisions of the Supreme Court.

First, the Panel majority's decision conflicts with *Jennings v. Rodriguez*. In *Jennings*, the Supreme Court explained the detention statutes "with the clarity of an Immigration Law primer." *Buenrostro-Mendez*, 166 F.4th at 513 n.7 (Douglas, J., dissenting). The *Jennings* Court explained:

> U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphases added). With this language, the Court drew a stark contrast between § 1225(b)(2)(A) and § 1226, reflecting the shared understanding among Congress, the Executive, and the courts that the former statute

---

[2] The statutory issue was presented in an appeal to the Seventh Circuit, where one of the judges in the majority endorsed Petitioner's position. *Castañon-Nava v. DHS*, --- F.4th ----, No. 25-3050, 2026 WL 1223250, at *11 (7th Cir. May 5, 2026) (opinion of Lee, J.) ("reading § 1225(b)(2)(A) to apply only to unadmitted noncitizens seeking lawful entry at our country's border and ports of entry" honors the text, structure, context, and background).

Appellate Case: 25-3248    Page: 19    Date Filed: 05/26/2026 Entry ID: 5643917

applies to noncitizens seeking admission at the border, while the latter statute governs noncitizens already in the United States.

This Court, sitting *en banc*, has recognized, that it "should not idly ignore considered statements the Supreme Court makes in dicta." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (en banc) (citation omitted). But the Panel majority did so here. The Panel majority brushed aside the Court's clear explanation of the statutes on the theory that *Jennings* provided merely "general background information" as to §§ 1225 and 1226, and that the applicability of § 1226 "does not preclude other statutory provisions—such as § 1225(b)(2)(A)— from also applying to . . . aliens" already in the country. *Avila*, 170 F.4th at 1136. But *Jennings* explained the INA's detention framework in plain terms: § 1225 operates "at the Nation's borders and ports of entry," 583 U.S. at 287, and § 1226 applies to noncitizens "inside the United States," *id.* at 288. The Second, Sixth, and Eleventh Circuits have recognized that, whether "dicta" or not, these statements reflect the Supreme Court's understanding of how the detention statutes work. *See Hernandez Alvarez*, 2026 WL 1243395, at *16 ("The Government's interpretation cannot readily be reconciled with *Jennings*."); *Barbosa da Cunha*, 2026 WL 1146044, at *14 ("the Court left no doubt as to its view regarding the differences between Sections 1225 and 1226"); *Lopez-Campos*, 2026 WL 1283891, at *3 ("The Supreme Court in *Jennings* described the relationship between the two detention

14

standards[.]"). Consequently, the Panel majority erred in disregarding *Jennings'* explication of the detention statutes.

Second, the Panel majority's suggestion that § 1226(c), as amended by the Laken Riley Act, "overlaps" with § 1225, *see Avila*, 170 F.4th at 1137, conflicts with *Nielsen v. Preap*. There, the Supreme Court addressed § 1226(c), which mandates the detention of noncitizens with certain criminal histories. *Preap*, 586 U.S. at 398. As Judge Erickson explained, § 1226(c) *supports* Petitioner's reading of the statutes: because § 1226(c) enumerates specific grounds that exempt some inadmissible noncitizens from bond eligibility under § 1226(a), it demonstrates that inadmissible noncitizens like Petitioner are generally eligible for bond under § 1226. *Avila*, 170 F.4th at 1139–40 (Erickson, J., dissenting).

The Panel majority, however, dismissed § 1226(c) and the Laken Riley Act, stating that they merely represented "Congress's effort to be 'doubly sure' to deny parole" to inadmissible noncitizens detained under an entirely different statute, § 1225(b)(2)(A). *Id*. at 1137 (citation omitted). But this fundamentally misunderstands the structure of detention statutes as explained by the Supreme Court. *Preap* held that § 1226(c) "is simply a limit on the authority conferred by subsection (a)." 586 U.S. at 409; *see also* 8 U.S.C. § 1226(a) (permitting release on bond "[e]xcept as provided in subsection (c)"). Thus, § 1226(c) operates *only* on those noncitizens who are detained under § 1226 in the first place—not those

15

detained under § 1225(b)(2)(A) or any other detention statute. *See Hernandez Alvarez*, 2026 WL 1243395, at \*17 (discussing *Preap*). The Panel majority's failure to engage with *Preap* supplies yet another reason for revisiting its decision.

**III.   This Case Presents Questions of Exceptional Importance.**

The Panel majority erroneously endorses the Executive's creation of the largest mandatory civil detention scheme in this nation's history—requiring the detention of up to *six million* noncitizens present in the United States—without authorization from Congress. *Avila*, 170 F.4th at 1138 (Erickson, J., dissenting); *see also supra* at 5 n.1. This presents an issue of exceptional importance that warrants rehearing en banc. *See, e.g.*, *S.A.A. v. Geisler*, 127 F.4th 1133, 1135 (8th Cir. 2025) (en banc).

Respondents' view is that Congress "required the Executive to detain millions of people like Petitioner—parents of American children, owners of American businesses, members of American communities—but that some thirty years passed before anyone noticed." *Barbosa da Cunha*, 2026 WL 1146044, at \*23 (Cabranes, J., concurring). This is "a paradigmatic 'elephant in a mousehole,'" *Hernandez Alvarez*, 2026 WL 1243395, at \*12 (quoting *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001)), whose impact cannot be understated. The detention policy sanctioned by the Panel majority has led to the arrest and detention of tens of thousands of people in this Circuit and others, without *any* finding that those

16

detained pose a flight risk or danger.[3] Instead, Respondents' new policy has swept up noncitizens who "have lived in the United States for years or decades," including those who "own property or work for locally owned business" and "have worked with local law enforcement to facilitate criminal prosecutions," *Lopez-Campos*, 2026 WL 1283891, at \*13, along with "noncitizens with citizen spouses, children, and grandchildren, and noncitizens otherwise specially protected by other statutory schemes due to their youth, status as survivors of crime, abuse, or trafficking, or other hardships," *Buenrostro-Mendez*, 166 F.4th at 517 (Douglas, J., dissenting). The extraordinary impact of Respondents' policy—in the absence of any evidence that Congress intended it—warrants the full Court's review.

## **CONCLUSION**

This Court should grant rehearing *en banc*.

---

[3] Indeed, Respondents' detention policy targets those with no criminal history. *See* David J. Bier, *5% of People Detained by ICE Have Violent Convictions, 73% No Convictions*, CATO Institute (Nov. 25, 2025), https://www.cato.org/blog/5-ice-detainees-have-violent-convictions-73-no-convictions (reporting that nearly three out of four detainees had no criminal record and accounted for 80% of the increase in detentions).

Appellate Case: 25-3248     Page: 23     Date Filed: 05/26/2026 Entry ID: 5643917

Dated: May 26, 2026

Respectfully submitted,

David L. Wilson
Cameron Lane Youngs Giebink
Katherine Lourdes Santamaria El
Bayoumi
WILSON LAW GROUP
3019 Minnehaha Avenue
Minneapolis, MN 55406
Tel.: (612) 436-7100
dwilson@wilsonlg.com
cgiebink@wilsonlg.com
ksantamaria@wilsonlg.com

Benjamin Casper
Teresa Nelson
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
MINNESOTA
P.O. Box 14720
Minneapolis, MN 55414
Tel.: (612) 274-7790
bcasper@aclu.org
tnelson@aclu.org

*/s/  Michael K.T. Tan*
Michael K.T. Tan
My Khanh Ngo
Oscar Sarabia Roman
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770
m.tan@aclu.org
mngo@aclu.org
osarabia@aclu.org

Judy Rabinovitz
Natalie Behr
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2660
jrabinovitz@aclu.org
IRP_NBehr@aclu.org

*Counsel for Petitioner-Appellee*

18

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3,900 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

Pursuant to 8th Cir. R. 28A(h), I certify that the foregoing brief has been scanned for viruses and is virus free.

Dated: May 26, 2026

/s/ *Michael K.T. Tan*
Michael K.T. Tan

*Counsel for Petitioner-Appellee*

19

Appellate Case: 25-3248    Page: 25    Date Filed: 05/26/2026 Entry ID: 5643917

# CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

Dated: May 26, 2026

/s/ *Michael K.T. Tan*
Michael K.T. Tan

*Counsel for Petitioner-Appellee*

20

Appellate Case: 25-3248     Page: 26     Date Filed: 05/26/2026 Entry ID: 5643917